UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMES J. KAUFMAN | ) |
| | ) |
|       **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No. 05-1631 (RWR) |
| | ) |
| **ALBERTO R. GONZALES, et al.** | ) |
| | ) |
| | ) |
|       **Defendants.** | ) |

**DEFENDANTS' MOTION TO DISMISS**

      Defendants, Attorney General Alberto Gonzales, Department of Justice(DOJ), Secretary Michael Chertoff, Department of Homeland Security (DHS) and Secretary Condoleezza Rice, Department of State(State), pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), 12(b)(4), 12(b)(5) and 12(b)(6), hereby move the Court for an order of dismissal on the grounds that this court has no subject matter jurisdiction, no jurisdiction over the named defendants, there is insufficiency of process, insufficiency of service of process and finally, notwithstanding the above, plaintiff has failed to state a claim upon which relief may be granted.

      A memorandum of points and authority is attached hereto.

      Plaintiff should take notice that any factual assertions contained in the declarations in support of defendants' motion will be accepted by the Court as true unless plaintiff submits his own declarations or other documentary evidence contradicting the assertions in the attached declarations.  See, Neal v. Kelly, 963 F.2d 453 (D.C. Cir. 1992) and Rule 56(e) of the Federal Rules of Civil Procedure which provides as follows:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

> Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e).

Respectfully submitted,

_____
KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney

_____
R. CRAIG LAWRENCE, D.C. BAR # 171538
Assistant United States Attorney

_____
HEATHER D. GRAHAM-OLIVER
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W.
Washington, D.C.  20530
(202) 305-1334

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMES J. KAUFMAN | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 05-1631 (RWR) |
| | ) |
| ALBERTO R. GONZALES, et al. | ) |
| | ) |
| | ) |
| Defendants. | ) |

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Defendants hereby submit this memorandum of points and authorities in support of their motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), 12(b)(4), 12(b)(5) and 12(b)(6).

### I. Introduction

*Pro se* prisoner, James Kaufman, is a United States citizen housed at Jackson Correctional Institution in Black River Falls, Wisconsin. He brought this action on October 26, 2005, after an unsuccessful attempt to renounce his U.S. citizenship under section 349(a)(6) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1481(a)(6). See generally Complaint ("Compl."). Plaintiff lists a series of referrals and correspondence beginning on July 25, 2004, with a letter addressed to former Attorney General, John Ashcroft and another sent to the United States Attorney in Madison, Wisconsin regarding his efforts to renounce his citizenship. Compl., Facts at p. 4-7. Essentially, Plaintiff seeks mandamus relief from this Court to order the Attorney General to renounce his citizenship under § 1481(a)(6) as well as monetary damages in the amount of $1500.00 for "negligence and non-compliance." Compl. at p. 9. Plaintiff named

as defendants: Alberto Gonzales, U.S. Attorney General; Michael Chertoff, Secretary Department of Homeland Security; and Condoleezza Rice, Secretary of the Department of State, in both their individual and official capacities. Compl., at p. 3.

## II. Standard of Review

### A. Requests for Dismissal

Defendants move for dismissal of plaintiff's complaint under Rule 12(b)(1), lack of subject matter jurisdiction and 12(b)(6), failure to state a claim.

A court may resolve a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) in two ways. First, the court may determine the motion based solely on the complaint. Herbert v. National Academy of Science, 974 F.2d 192, 197 (D.C. Cir. 1992). Alternatively, to determine the existence of jurisdiction, a court may look beyond the allegations of the complaint, consider affidavits and other extrinsic information, and ultimately weigh the conflicting evidence. See id.

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of a complaint. Atchinson v. District of Columbia, 73 F. 3d 418, 421 (D.C. Cir. 1996). A complaint may be dismissed for failure to state a claim upon which relief may be granted, if the facts pled and reasonable inferences therefrom are legally insufficient to support the relief requested. Appleton v. United States, 69 F. Supp. 2d. 83, 86 (D.D.C. 1999). In reviewing a motion to dismiss, whether on grounds of lack of jurisdiction over the subject matter or for failure to state a cause of action, all factual allegations in the complaint and all reasonable inferences that can be drawn therefrom must be accepted as true and viewed in the light most favorable to the non-moving party. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Scheuer v. Rhodes, 416 U.S. 232

(1974). The court need not, however, accept as true the plaintiff's legal conclusions. See Taylor v. FDIC, 132 F.3d 753, 762 (D.C. Cir. 1997).

From the facts alleged in the complaint, it appears beyond doubt that plaintiff can prove no set of facts that would entitle him to relief.

### III. Argument

#### A. SOVEREIGN IMMUNITY

Plaintiff seeks to bring this action under numerous federal statutes. With the exception of Mandamus, 28 U.S.C. § 1361, none of these statutes waive sovereign immunity against the United States. Sovereign immunity bars any claims against the United States or the individual defendants in their official capacities. Meyer v. Reno, 911 F.Supp. 11 (D.D.C. 1996); Marshall v. Reno, 915 F.Supp. 426 (D.D.C. 1996); Deutsch v. U.S. Dept. of Justice, 881 F.Supp. 49, 55 (D.D.C. 1995). Moreover, insofar as plaintiff seeks monetary damages against the individual defendants in their official capacity for an alleged violation of constitutional rights, the action must be deemed as if it were against the United States itself. Dugan v. Rank, 372 U.S. 609, 620 (1963). This is because, where damages are sought from a federal officer in his or her official capacity, "the judgment sought would expend itself on the public treasury." Id., at 620; Hafer v. Melo, 502 U.S. 21, 25 (1991). Thus, the Court may not proceed unless the United States has waived its sovereign immunity from recovery. The United States, "as sovereign, 'is immune from suit save as it consents to be sued … and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" United States v. Sherwood, 312 U.S. 584, 586 (1941) (citations omitted). That is, consent to suit is a prerequisite to subject matter jurisdiction over a claim against the United States, its agencies and officials. See United States

v. Orleans, 425 U.S. 807, 814 (1976); FDIC v. Meyer, 510 U.S. 471, 475 (1994).

A waiver of the government's sovereign immunity must be "expressed in unequivocal statutory text and cannot be implied" and "will be strictly construed, in terms of its scope, in favor of the sovereign." Lane v. Pena, 518 U.S. 187, 192 (1996). Plaintiff bears the burden of establishing that a specific statute waives the United States' sovereign immunity for his claims. See Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000); Paradyne v. U.S. DOJ, 647 F. Supp. 1228, 1231 (D.D.C. 1986). Plaintiff cannot meet this burden. Although Plaintiff suggests four possible basis for this Court's jurisdiction: 28 U.S.C. § 1331 (the federal question statute), 28 U.S.C. § 1343 (civil rights conspiracy), 28 U.S.C. § 1346(a)(2) (the Little Tucker Act), and 28 U.S.C. § 1361 (mandamus), only one of these statutes waives the United States' sovereign immunity in this case. Compl. at ¶ 4.

### 1. The Federal Question Statute Does Not Waive Sovereign Immunity.

It is axiomatic that 28 U.S.C. 1331, by itself, does not waive sovereign immunity. Voluntary Purchasing Groups, Inc. v. Reilly, 889 F.2d 1380, 1385 (D.C. Cir. 1989) ("[I]t is well settled that section 1331 'implies no general waiver of sovereign immunity[ ],' and, therefore, cannot alone be relied upon as the basis of jurisdiction.") (citations omitted). See also Arvanis v. Noslo Eng'g Consultants, Inc., 739 F.2d 1287, 1290 (7th Cir. 1984) ("No citation is needed to reject appellants' suggestion that 28 U.S.C. § 1331 waives sovereign immunity"), cert. denied, 469 U.S. 1191 (1985); Clopton v. Dep't of Navy, 1996 WL 680189, *1 (D.C. Cir. Oct. 30, 1996) (§ 1331 "does not provide a separate waiver of sovereign immunity for suits against the government"). Randall v. United States, 95 F.3d 339, 345 (4th Cir. 1996) (noting that the general

federal question statute merely establishes when a subject matter is within the competence of a federal court to entertain).  Therefore, plaintiff must prove the United States has waived its sovereign immunity in another statute.  See Coleman v. United States, 715 F.2d 1156, 1161 (7th Cir. 1983); Santucci v. U.S. Dept. of State, 2005 U.S. Dist. LEXIS 29028 *9.  Plaintiff's pleading is deficient in this regard.

### 2. There Is No Waiver Of Immunity Within The Civil Rights Statute

28 U.S.C. § 1343 pertains to civil rights conspiracy violations.  Section 1343 on its face creates Federal District Court jurisdiction of suits to redress deprivation *under color of state law* of any rights secured by United States Constitution or by any federal statute providing for equal rights of citizens.  Section 1343 does not pertain to the United States nor does it waive sovereign immunity.  Service Arms Co. v United States Treasury Dept., 416 F Supp 2 (WD Okla, 1975); Morpurgo v Board of Higher Education, 423 F Supp 704 (SD NY, 1976) (The United States itself cannot be sued under 42 U.S.C. §§ 1983 and 1985, and 28 U.S.C. § 1343 both because it is not "person", and because these provisions do not waive sovereign immunity); Garcia v United States, 538 F Supp 814 ( SD Tex, 1982) (28 U.S.C. § 1343 does not waive sovereign immunity and thus does not authorize award of damages against United States or federal officials in their official capacity).

### 3. The Little Tucker Act Is Inapplicable To This Case

Plaintiff asserts that this Court has jurisdiction under 28 U.S.C. § 1346, otherwise known as the Little Tucker Act (Act).  The Act provides the District Court concurrent jurisdiction with the United States Court of Federal Claims for certain actions not exceeding $10,000.00.  28

U.S.C. § 1346(a)(2).[1]  Specifically, the Act provides the district court with jurisdiction only when the claim against the United States is "founded either upon the Constitution or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1346(a)(2).  Accordingly, under the Act, a party's claims must either rest upon a contract, which plaintiff's claim does not, or "seek the return of money paid by [plaintiff] to the Government," or *establish an entitlement to money damages under a federal statute that can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.*  United States v. Mitchell, 463 U.S. 206, 216-17 (1983);  United States v. Testan, 424 U.S. 392, 400 (1976); Eastport S.S. Corp. v. United States, 372 F.2d 1002, 1009 (1967).  The Act does not provide a substantive right to recover.  Rather, the claimant invoking Tucker Act jurisdiction must establish a substantive right to recover money damages.  National Asso., of Counties v. Baker, 842 F.2d 369, 374 (D.C. Cir. 1988).

Thus, in order for the Act to apply to this case it must be established that a federal statute mandates the compensation sought by the claimant.  Id.  Plaintiff cannot establish that 8 U.S.C. § 1481(a)(6) mandates the payment of compensation.  On the contrary, § 1481 merely governs renunciation of citizenship.  Moreover, plaintiff has requested equitable relief of mandamus and a declaration that he has formally and voluntarily renounced his citizenship.  Compl., at p. 9.  Clearly, such relief does not fall under the auspices of the Act.  Richardson v. Morris, 409 U.S.

---

[1] The Tucker Act, 28 U.S.C. § 1491, governs claims over $10,000.00.  Those claims must be heard in the Court of Claims, but the grant of jurisdiction under the Tucker Act and the Little Tucker Act is the same.  See Kipperman v. McCone, 422 F.Supp. 860, 868 (D.C. Cal. 1976).  Accord, Santucci, supra., at *11.

464, 465 (1973) ("The Act has long been construed as authorizing only actions for money judgments and not suits for equitable relief against the United States."); Ben-Shalom v. Sec'y of Army, 807 F.2d 982, 988 (Fed. Cir. 1986) (holding that Tucker Act does not provide jurisdiction for petitioner's suit for writ of mandamus, an equitable proceeding, when petitioner does not also request money damages); Bobul v. U.S. Dep't of Justice, 970 F.2d 854, 859 (Fed. Cir. 1992) ("While limited equitable relief is sometimes available in Tucker Act suits, the equitable relief must be incidental to and collateral to a claim for money damages.")  Although he has requested compensatory damages from Attorney General Gonzales, in an amount of $1500.00, such is not of the sort contemplated by the Act, i.e., a federal compensation mandating law.  National Asso., of Counties v. Baker, 842 F.2d at 374; Duarte v. United States, 532 F2d 850, 852 (2nd Cir. 1976) ("to recover against the United States, the grant of a right of action must be made with specificity; the basis of the federal claim - whether it be the Constitution, a statute, or a regulation - does not create a cause of action for money damages unless. . .that basis in itself can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained. Thus, the appellant may not recover damages from the United States under the Tucker Act on the claim that the procedures by which he surrendered his Merchant Mariner's Document violated the requirements of due process.")

 **B.  Mandamus**

   **1. Mandamus Does Not Lie For Discretionary Acts**

 The Mandamus Act, 28 U.S.C. § 1361, vests district courts with "original jurisdiction over any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361; Fornaro v. Kay

Coles James, 416 F.3d 63, 69 (D.C. Cir. 2005). The granting of a writ of mandamus is a drastic remedy to be used only in extraordinary situations. Fornaro, 416 F3d at 69; Consolidated Edison, et al., v. Ashcroft, et al., 286 F.3d 600, 605 (D.C. Cir. 2002). Because of the potential conflict between the branches of government engendered by use of this remedy, courts have limited its application to "only. . . the clearest and most compelling cases," 13th Regional Corp. v. U.S. Dep't of Interior, 654 F.2d 758 (D.C. Cir. 1980); Cartier v. Secretary of State, 506 F.2d 191, 199 (D.C. Cir. 1974) (preferring to relegate mandamus to the status of an "extraordinary remedy.") The courts have achieved this limitation by issuing a writ only when a petitioner has demonstrated the following elements: (1) the plaintiff has a clear legal right to the relief sought; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to plaintiff. Id.; Council of and for the Blind, Inc. v. Regan, 709 F.2d 1521, 1533 (D.C. Cir. 1983). "According to traditional doctrine, a writ of mandamus will issue "only where the duty to be performed is ministerial and the obligation to act peremptory, and clearly defined. The law must not only authorize the demanded action, but require it; the duty must be clear and undisputable." 13th Regional, 654 F.2d at 760 (citations omitted); Wilbur v. United States, 281 U.S. 206, 218-19 (1929) (mandamus is inappropriate except where a public official has violated a ministerial duty. Such a duty must be "so plainly prescribed as to be free from doubt and equivalent to a positive command. Where the duty is not thus plainly prescribed, but depends on a statute or statutes the construction or application of which is not free from doubt, it is regarded as involving the character of judgment or discretion which cannot be controlled by mandamus.") The party seeking mandamus has the burden of showing that its right to issuance of the writ is clear and indisputable. Power v. Barnhart, 292 F.3d 781, 785 (D.C. Cir. 2002) (citations omitted). The

plaintiff has failed to satisfy that burden here.

The statute governing voluntary renunciation of citizenship, which plaintiff relies upon provides in pertinent part:

> (a) A person who in a national of the United States whether by birth or naturalization, shall lose his nationality by voluntarily performing any of the following acts with the intention of relinquishing United States nationality:
> (6) making in the United States a formal written renunciation of nationality in such form as may be prescribed by, and before such officer as may be designated by, the Attorney General, whenever the United States shall be in a state of war and the Attorney General shall approve such renunciation as not contrary to the interests of national defense.

8 U.S.C. § 1481 (a)(6).

In 1944, the Nationality Act was amended to authorize renunciations during times of war if it was determined that such renunciations were in the national interest. Tadayasu v. Clark, 77 F.Supp. 806, 809 (N.D. Cal. 1948). This amendment was enacted to allow the government to continue to lawfully detain U.S. citizens of Japanese origin during WWII by having them renounce their citizenship. Id., at 809-10. Simultaneously, with the passage of the 1944 amendment, regulations were promulgated to implement the statute. 9 Fed. Reg. 12241 (Oct. 10, 1944) (codified at 8 C.F.R. § 316.1, et seq. (1944)). These regulations provided an administrative process for renouncing citizenship within the United States by requesting from the Department of Justice an "Application for Renunciation of United States Nationality." However, the regulations specifically provided that they were effective only until the "cessation of the present state of war unless sooner terminated by the Attorney General." Id. Thus, the regulations ceased to exist at the end of the war. The Immigration and Nationality Act (INA) essentially adopted a virtually identical statutory provision in 1952, which is currently codified at 8 U.S.C.

§1481 (a)(6). The Attorney General has not promulgated regulations to implement this provision.

The more commonly invoked statutory provision of expatriation is found at § 1481(a)(5), which requires a "formal renunciation of nationality before a diplomatic or consular officer of the United States <u>in a foreign state</u>, in such form as may be prescribed by the Secretary of state . . ." 8 U.S.C. § 1481 (a)(5). The Secretary of State has implemented this provision by setting forth the manner and form of the renunciation in a regulation. <u>See</u> 8 C.F.R. § 50.50. Under this provision, declarants may leave the country and renounce their citizenship before a consular officer abroad. This would become an option for plaintiff once he is released from incarceration in Wisconsin. <u>See</u> <u>Koos v. Hom</u>, 204 F. Supp. 2d 1099, 1108 (W.D. Tenn, 2002).

Section 1481(a)(6) provides that the applicant must make a formal renunciation "in such form as <u>may</u> be prescribed by . . .the Attorney General." Section (a)(6) imposes no duty on Defendant Gonzales to act. Rather, the statute vests discretion in the Attorney General as to whether and when to set forth a procedure for renunciations in the United States. Here, the plaintiff's request for renunciation can not be deemed to have complied with proper form because the Attorney General has not prescribed such form. At least one court has denied a renunciation request under Section 1481(a)(6) because "the United States is not in a state of war and § 1481(a)(6) is presently inoperative. Thus, the Attorney General has not prescribed procedures for such renunciations." <u>Koos v. Hom</u>, 204 F. Supp. 2d 1099, 1108 (W.D. Tenn. 2002)[2]; <u>cf.</u> <u>Kahane v. Secretary of State</u>, 700 F. Supp. 1162, 1164 (D.D.C. 1998) (denying initial

---

[2] The <u>Koos</u> Court recognized that there are alternate methods to renounce one's U.S. citizenship. The Court stated that "if and when Koos satisfies his obligation to the citizens of the State of Wisconsin, . . . he may travel at his own expense to the country of his choice and

request for renunciation made abroad under INA, Section § 1481(a)(5) because it was not in the precise form prescribed by the Secretary of State.")

Moreover, the statute also appears to contemplate that the Attorney General has the discretion to determine whether, even when all other elements have been met, a renunciation is or is not contrary to the interests of national defense. 8 U.S.C. § 1481(a)(6). The phrase in "the interests of national defense" is both extremely broad and amorphous. At the same time, it is inherently enmeshed with policy judgments specific to the particular programs run by the agency. Moreover, the phrase goes to the heart of the presumption against the courts becoming overly involved in foreign policy matters such as immigration. See, e.g., INS v.Aguirre-Aguirre, 526 U.S. 415, 424-25 (1999).

Mandamus is inappropriate except where a public official has violated a ministerial duty. Such a duty must be so *plainly prescribed as to be free from doubt and equivalent to a positive command*. Where the duty depends on a statute the construction or application of which is not free from doubt, it is regarded as involving the character of judgment or discretion which cannot be controlled by mandamus. Wilbur, supra. Nothing in § 1481(a)(6) gives petitioner a "clear right" to a decision approving a loss of nationality in the United States even if the United States is in a state of war. Rather the Attorney General, as § 1481(a)(6) says, has the discretion to determine the form of the renunciation, the officer upon whom the renunciation is to be presented and, even when all other elements have been met, whether the renunciation is or is not contrary to the interests of national defense. Additionally, neither the defendant Rice and Department of State nor the defendant Chertoff and the Department of Homeland Security have any duty or

---

renounce his citizenship." Id.

11

authority under § 1481(a)(6) and therefore the action against them, in particular, should be dismissed. Accordingly, this action should be dismissed as plaintiff has failed to establish that his right to a writ of mandamus is clear and indisputable.

### C. The Administrative Procedure Act

Although not specifically pled by Plaintiff, the Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq.*, would only provide the district court with jurisdiction under certain limited circumstances. The APA does not, however, provide for jurisdiction in cases like this one where the statute provides for no justiciable standard by which a court may review the agency's decision. See 5 U.S.C. § 701(a)(2); Webster v. Doe, 486 U.S. 486, 599-600 (1988); Heckler v. Chaney, 470 U.S. 821 (1985); and Citizens to Protect Overton Park, Inc. v. Volpe, 401 U.S. 402 (1971). The nature of the agency decision also indicates unfettered discretion. Of all the statutory phrases ever considered by the courts under the "no law to apply" exception to the APA, perhaps none "fairly exudes deference" more than the phrase "the national interest." See Webster v. Doe, 486 U.S. at 600 (interpreting "the interests of the United States"). As previously discussed in Section III.B, any action taken under § 1481(a)(6), is committed to the discretion of the Attorney General alone. Thus, even under the APA, the Court lacks jurisdiction over plaintiff's claim to renounce his citizenship under § 1481(a)(6). This is so, because the Attorney General's discretion is a key component in executing this provision.

### D. Constitutional Claims

Plaintiff also alleges that he has a substantive constitutional right to renunciation of his

U.S. citizenship.[3] See Compl. at p. 2, ¶3.  Sovereign immunity bars any constitutional claims against the named defendants in their official capacities. To the extent that plaintiff seeks damages for alleged constitutional violations against the heads of the Department of Justice, Department of State, and Department of Homeland Security in their official capacities, his claims must be dismissed absent a waiver of sovereign immunity.[4]  Meyer v. Reno, 911 F. Supp. 11 (D.D.C. 1996); Marshall v. Reno, 915 F. Supp. 426 (D.D.C. 1996); Deutsch v. Dep't of Justice, 881 F. Supp. 49, 55 (D.D.C. 1995).  The inherent sovereign immunity of the United States protects it and its agencies from suit absent express waiver.  See United States v. Nordic Village, 503 U.S. 30 (1992).  Sovereign immunity also bars suits for money damages against officials in their official capacities for nondiscretionary acts absent a specific waiver by the government.  Clark v. Library of Congress, 750 F.2d 89, 101-02 (D.C. Cir. 1984).  Plaintiff's complaint does not contain any colorable basis for such a waiver and must be dismissed for lack of subject matter jurisdiction.

To the extent the plaintiff is seeking monetary damages against the defendant Alberto Gonzales in his official capacity, the lawsuit must be construed as against the United States. Laury v. Greendfield, 87 F. Supp. 2d 1210, 1213 (D. Kansas 2000) (relying on Kentucky v. Graham, 473 U.S. 159 (1985)).  The United States, however, has not waived its immunity from constitutional tort lawsuits.  See Federal Deposit Insurance Corp. v. Meyer, 510 U.S. 471, 475

---

[3] Plaintiff claims that the failure of the Attorney General to renounce implicates his right to free speech, equal protection, substantive due process, procedural due process, cruel and unusual punishment, the privileges and immunities Clause, the Supremacy clause, the international Commerce Clause, and Article I, Section 8 of the U.S. Constitution.

[4] Plaintiff has requested compensatory damages against the Attorney General only. Compl., at p. 9.

13

(1994); Deaf Smith County Grain Processors, Inc. v. Glickman, 162 F.3d 1206, 1210 (D.C. Cir. 1998). An action for damages based upon a Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971) theory can only be maintained against individual defendants and cannot be brought against the United States or an agency thereof. Meyer, 510 U.S. at 475. The only waiver exposing the United States to tort liability is the Federal Tort Claims Act (28 U.S.C. §§ 2671-2680), which does not apply to constitutional torts. Risley v. Hawk, 918 F. Supp. 18 (D.D.C. 1996).

**E. Plaintiffs' Civil Action Against the Individually Named Defendants Alberto Gonzales, Michael Chertoff, and Condoleezza Rice Should Be Dismissed for Improper Service.**

It is well-established that, in an action against a federal employee in his or her individual capacity, the individually sued defendant must be served with process in accordance with Rule 4(e) of the Federal Rules of Civil Procedure. Rule 4(e) requires that a copy of a summons and complaint be delivered to the defendant (or his appointed agent) personally, or be left "at his dwelling house or usual place of abode with some person of suitable age and discretion" who resides there. Service on the U.S. Attorney in the district where the action was brought pursuant to Fed. R. Civ. P. 4(i) "does not obviate the requirement of personal service under Fed. R. Civ. P. 4(d)(1) where the action is in substance against a federal official in his individual capacity". See Lawrence v. Acree, 79 F.R.D. 669, 670 (D. D.C. 1978). Similarly, service at a place of business does not satisfy the service rule.

Here, defendants were not personally served pursuant to Fed. R. Civ. P. 4(e). They were served at their place of employment. See attached Exhibits A, B and C - Process Receipts and Return - for Alberto Gonzales (Gonzales), Michael Chertoff (Chertoff) and Condoleezza

Rice(Rice). Because service of process is defective as to the defendants in their individual capacity, this action cannot proceed against them personally. Micklaus v. Carlson, 632 F.2d 227, 240 (3rd Cir. 1980); Griffith v. Nixon, 518 F.2d 1195, 1196 (2d Cir. 1985), cert. denied, 423 U.S. 995 (1975).

The defendants' limited appearance herein in the form of this motion to dismiss does not constitute an acquiescence in the manner of service, a waiver of proper service, or a voluntary entrance of appearance.

**F. The Defendants Are Entitled to Dismissal on the Basis of Qualified Immunity**

While it is true that plaintiff has alleged a plethora of constitutional claims against the defendants, none of them have any viability. First, he is only claiming monetary damages against Alberto Gonzales, thus, the Bivens claims against the other named defendants in their individual capacities must be dismissed. Secondly, the complaint should be dismissed because the defendants are entitled to the complete defense of qualified immunity. Harlow v. Fitzgerald, 457 U.S. 800 (1982). Government officials performing discretionary functions are shielded from liability for civil damages in so far as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow 457 U.S. at 818. Once the individual Defendants raise qualified immunity, courts must resolve two issues: 1) whether a constitutional right would have been violated on the facts alleged; and assuming the violation is established (from the pleadings), 2) whether the right alleged to have been violated was clearly established. Saucier v. Katz, 533 U.S. 194 (2001). Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. Saucier v. Katz, 121

15

S.Ct. at 2155.

The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a *reasonable* official that his conduct was unlawful in the situation he confronted.  Id. at 2156.  See Wilson v. Layne, 526 U.S. 603, 615 (1999).  An analysis of Plaintiffs' claims against each of the individual defendants reveals that Plaintiffs failed to state a constitutional violation by any of the defendants, because the facts as alleged do not show defendants' conduct violated a constitutional right.  The complaint does not articulate what actions each named defendant took or failed to take, nor does it adequately allege a violation of Plaintiffs' constitutional rights. Even assuming arguendo, the complaint could be interpreted to sufficiently state each named defendant committed unconstitutional acts, plaintiff has failed to articulate how these constitutional rights were clearly established.  Anderson v. Creighton, 483 U.S. 635, 640 (1987).  Accordingly, even under the facts as alleged in the complaint, each of the named defendants is entitled to qualified immunity, and should be dismissed from this lawsuit.

There is no indication from the complaint that any named defendant made a decision concerning plaintiff's application to renounce his citizenship.  This is especially true given the fact that § 1481(a)(6) is inoperable.  Moreover, neither Rice nor Chertoff have any duty or authority under §1481(a)(6) and therefore, the action against them, in particular, should be dismissed.  Additionally, respondeat superior liability does not exist under Bivens.  Tarpley v. Greene, 684 F.2d 1, 10 (D.C. Cir.1982).  Thus, because, plaintiff's complaint fails to establish that these defendants violated a constitutional right with respect to these defendants it should be dismissed.

16

## IV.  CONCLUSION

For the reasons stated above, plaintiff's complaint should be dismissed.

                Respectfully submitted,

                _____
                KENNETH L. WAINSTEIN, D.C. BAR # 451058
                United States Attorney

                _____
                R. CRAIG LAWRENCE, D.C. BAR # 171538
                Assistant United States Attorney

_____
                _____
                HEATHER D. GRAHAM-OLIVER
                Assistant United States Attorney
                Judiciary Center Building
                555 4th St., N.W.
                Washington, D.C.  20530
                (202) 305-1334

## CERTIFICATE OF SERVICE

I hereby certify that on this _____ day of January 2006, I caused the foregoing Motion

To Dismiss to be served on Pro Se Plaintiff by mail, postage prepaid, addressed as follows:

**James J. Kaufman #351960**
**N6500 Haipek Road**
**P.O. Box 233**
**Black River Falls, WI 54615-0233**

 

_____
HEATHER GRAHAM-OLIVER
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.  20530
(202) 305-1334