IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

James J. Kaufman,

        Plaintiff,

    -vs-

Alberto R. Gonzalez,
Michael Chertoff, and
Condoleezza Rice,

        Defendant(s).

CASE NO. 05-cv-01631-RWR

PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION TO DISMISS

---

    Plaintiff, James J. Kaufman, pro se, opposes the defendants' motion to dismiss, wherein this court does have subject matter jurisdiction; does have jurisdiction over each named defendant; where each defendant was properly served; and Kaufman's complaint states claims upon which Kaufman is entitled to relief.

    Kaufman points out that the defendants reference "declarations in support of defendants' motion," yet no such declarations were attached to the motion or to the memorandum of law. As such, Kaufman cannot address any statements made in the referenced document. Similarly, the defendants assert, on page 15 of their memorandum of law, that they had attached as Exhibits A, B, and C - Process Receipts and Return. No such documents were attached to the copy served upon Kaufman. Lastly, the defendants have submitted no proposed findings of fact and/or affidavits in support of their motion.

I.    <u>SUBJECT MATTER JURISDICTION</u>

    The defendants have moved to dismiss, alleging that this court does not have subject matter jurisdiction, under Rule 12(b)(1).

(1)

LEG 351960

A federal district court has jurisdiction to determine whether a cause of action maintanable in federal court is stated by the complaint. <u>Montana-Dakota Utils v. Northwestern Pub. Serv.</u>, 341 U.S. 246, 71 S.Ct. 692 (1951).

This court has subject matter jurisdiction under 28 USCS § 1331, which states, "The district courts <u>shall</u> have original jurisdiction of <u>all</u> civil actions arising under the Constitution, laws, or treaties of the United States." District courts have jurisdiction over claims for injunctive or declaratory relief and power to review decisions and actions of federal agencies, under 28 USCS § 1331. <u>Parkview Corp. v. Department of Army</u>, 490 F.Sup. 1278 (E.D.Wis. 1980); <u>McCartin v. Norton</u>, 674 F.2d 1317 (9th Cir. 1982); <u>Parola v. Weinburger</u>, 848 F.2d 956 (9th Cir. 1988).

This court also has subject matter jurisdiction under 28 USCS § 1346(a), which states, "The district courts <u>shall</u> have original jurisdiction of <u>any</u> civil action against the United States, founded either upon the Constitution, or any Act of Congress." See also <u>Wiren v. Eide</u>, 542 F.2d 757 (9th Cir. 1976).

A cursory review of Kaufman's complaint clearly shows that Kaufman's claims in this action are based, in part, upon the United States Constitution, and upon certain Acts of Congress, as well as upon international laws and United Nations policies. As such, this court does have subject matter jurisdiction in this action.

II.   <u>FAILURE TO STATE A CLAIM</u>

The defendants have moved to dismiss, alleging that "from the facts alleged in the complaint, it appears beyond doubt that plaintiff can prove no set of facts that would entitle him to relief," under Rule 12(b)(6).

As quoted by the defendants, the law holds that all factual allegations in the complaint (as well as reasonable inferences drawn from those facts) must be accepted as true and viewed in the light most favorable to Kaufman.

(2)

LEG  351960

In his complaint, Kaufman alleged the following relevant facts: (1) that 8 USCS § 1481(a)(6) provides for renunciation of citizenship during a time of war by applying to the Attorney General; (2) that the United States is currently at war; (3) that renunciation of citizenship is a fundamental, natural, and inherent right; (4) that Kaufman sent multiple requests to the Attorney General (as well as to other federal agencies and offices after being directed to do so by government employees); (5) that all agencies contacted asserted that they did not have jurisdiction under the statute, despite the strict wording of that statute that clearly refers to the Attorney General; (6) that the Attorney General had a duty under the law to consider, and either approve or deny, Kaufman's requests to renounce his citizenship; (7) that the Attorney General refused to consider Kaufman's requests; and (8) that Kaufman is entitled to relief.

All of the above facts, and all other facts asserted in the complaint at ¶12-40, are accurate and true. The proof of Kaufman's claims is already included in this court's record, as Kaufman submitted copies of <u>all</u> documents in his possession to the court and to the defendants in his initial disclosure under Rule 26(a)(1). These documents were submitted on December 8, 2005.

As such, Kaufman has provided all necessary information for this court to determine that he has stated valid claims which entitle him to relief.

III. <u>SOVEREIGN IMMUNITY</u>

The defendants have alleged that this action cannot proceed because the United States has sovereign immunity. This is not true.

Sovereign immunity is waived, pursuant to 5 USCS § 702, for non-monetary actions brought pursuant to 28 USCS § 1331, the federal question statute. <u>Guerrero v. Stone</u>, 970 F.2d 626 (9th Cir. 1992); <u>Cabrera v. Martin</u>, 973 F.2d 1330 (4th Cir. 1994); <u>Hou Hawaiians v. Cayetano</u>, 183 F.3d 945 (9th Cir. 1999); <u>Federal Nat. Mortg. Assoc. v. LeCrone</u>, 868 F.2d 190 (6th Cir. 1989).

(3)

LEG 351960

Kaufman concedes that sovereign immunity has not been waived for monetary relief under 28 USCS § 1331, and Kaufman therefore withdraws his request for monetary damages in this action, if this is necessary to proceed on the other issues. Sovereign immunity does not bar suit where no money damages are sought. Ben Shalom v. Secretary of Army, 489 F.Supp. 964 (E.D.Wis. 1980); Jaffee v. United States, 592 F.2d 712 (3rd Cir. 1979), cert. denied, 441 U.S. 961, 99 S.Ct. 2406 (1979); Johnsrud v. Carter, 620 F.2d 29 (3rd Cir. 1980); Johnson v. Hoffman, 424 F.Supp. 490 (E.D.Mo. 1977) (sovereign immunity does not necessarily bar suit, it only bars certain types of relief), aff'd 572 F.2d 1219 (8th Cir. 1978), cert. denied, 439 U.S. 986, 99 S.Ct. 579 (1978).

The Administrative Procedures Act (APA) permits judicial review of agency action, and Congress has terminated sovereign immunity where a suit does not involve money damages. Thus, eliminating money damages and proceeding solely on the remaining issues is within the court's subject matter jurisdiction. Rose Acre Farms v. Madigan, 956 F.2d 670 (7th Cir. 1992).

The waiver of sovereign immunity contained in 5 USCS § 702 is not limited to suits brought under the APA. Specter v. Garrett, 995 F.2d 404 (3rd Cir. 1993); B.K. Instrument, Inc. v. United States, 715 F.2d 713 (2nd Cir. 1983) (5 USCS § 702 removes defense of sovereign immunity in actions brought under 28 USCS § 1331); Sprecher v. Graber, 716 F.2d 968 (2nd Cir. 1983); Eric v. Secretary of HUD, 464 F.Supp. 44 (D.C. Alaska 1978).

Therefore, when all of the various claims and statutes have been reviewed as a whole, it is clear that sovereign immunity has been waived for Kaufman's non-monetary claims, and this action must be permitted to proceed.


IV.    MANDAMUS

The defendants assert that the Attorney General has no clear duty to act upon Kaufman's multiple requests to renounce his citizenship pursuant to 8 USCS § 1481(a)(6), and that Kaufman has not proven that he had a clear legal

(4)

LEGA 351960

right to such action. However, Kaufman's complaint clearly sets forth all of the required elements which would entitle him to relief.

First, Kaufman has a clear legal right to the requested relief. The law states that renunciation of citizenship is a fundamental, natural, and inherent right of United States citizens. [See Complaint, ¶ 5, 16-19] The Act of July 27, 1868, paraphrased, states that any action by the defendants which "denies, restricts, impairs, or questions" Kaufman's right of expatriation is a violation of the laws. Further, Kaufman is being denied the right to change his nationality, which is a violation of Article 15(2) of the United Nations Universal Declaration of Human Rights.

Second, the defendants have a clear duty to act, and the defendants <u>did</u> act, in a fashion. In response to Kaufman's multiple letters, the defendants responded by asserting that they had no jurisdiction over Kaufman's requests. In the words of Department of Justice official Melanie Ann Pustay, "neither this Office <u>nor the Office of the Attorney General</u> handles citizenship matters." [Complaint ¶ 34] In fact, 8 USCS § 1481(a)(6) clearly and specifically grants jurisdiction to the Attorney General. The statute is clear. While the Attorney General has the discretion to prescribe the <u>form</u> (i.e., wording, place, time, etc.) in which Kaufman may renounce his citizenship, the Attorney General <u>does not</u> have the discretion to circumvent the law by refusing to consider Kaufman's request, or by failing to formulate a procedure for renunciation of citizenship during a time of war.

The defendants assert "the Attorney General has not promulgated regulations to implement this provision." The United States is currently at war, so there must be <u>some</u> way of invoking the statute. Clearly, Congress never intended the statute to be interpreted to mean that the Attorney General could simply refuse to prescribe the form of renunciation. Said another way, the Attorney General may prescribe <u>the</u> form, but may not fail (or refuse) to prescribe <u>any</u> form. Such an interpretation of the statute would render the statute meaningless. An analogy would be if the courts required a plaintiff to use only forms created by the court, and then find out that the court never bothered to create those forms, thereby denying access to the courts.

(5)

LEG. 351960

If the Attorney General never bothered to create the procedures necessary for renunciation, then why is the statute there to begin with? The United States is currently at war, so the procedures should have been enacted. An agency's refusal to institute rule-making is a final action which is subject to review. General Motors Corp. v. NHTSA, 898 F.2d 165 (App. D.C. 1990).

Lastly, there is no other adequate remedy available to Kaufman. The defendants assert that Kaufman could choose to renounce his citizenship pursuant to 8 USCS § 1481(a)(5), once he is released from incarceration in Wisconsin. This is not a valid option, because the State of Wisconsin has an administrative rule which prevents Kaufman from leaving the country, even after he is released from incarceration. [See Wisconsin Administrative Code, DOC 328.06] Though Kaufman will be released from incarceration on June 13, 2007, he is not permitted to leave the country until June 13, 2027 -- TWENTY YEARS LATER.

This court should also note that, using the defendants' reasoning, another "option" would be 8 USCS § 1481(a)(7), where Kaufman could voluntarily commit an act of treason. Are the defendants asserting that Kaufman should attempt such an act of treason, solely to divest himself of United States citizenship?

The case cited by the defendants, Koos v. Hom, 204 F.Supp.2d 1099 (W.D. Tenn. 2002), is not on point. The Koos court, in making their decision, asserted that the United States was not in a state of war. At that time, such an assertion was true. However, times have changed, and the United States is now at war, and therefore 8 USCS § 1481(a)(6) is available to Kaufman.

Lastly, the defendants assert that the Attorney General also has discretion to deny Kaufman's request if it would be contrary to the interests of national defense. The Attorney General never bothered to consider Kaufman's requests, and the Attorney General never made any such determination as to whether or not Kaufman's renunciation would pose a threat to the security of the United States.

(6)

LEG. 351960

On a side note, the Koos case involved a prisoner who wished to obtain permission to travel to another country, and then renounce his citizenship. Koos also sought an order directing the federal government to deport him. Neither of these two issues affects this action, because Kaufman has not requested permission to travel to a foreign country, and has not requested that he be deported (at least, not at this time). The Koos court also asserted that "the United States is not in a state of war and § 1481(a)(6) [was] presently inoperative." That may have been true when the Koos case was decided, but the defendants cannot legitimately claim at this time that the United States is not in a state of war. Therefore, the Koos case is completely off point.

V.    ADMINISTRATIVE PROCEDURES ACT

The defendants raise the issue of the APA, and note that it was not specifically pled by Kaufman. The defendants assert that there is no standard by which this court may review Kaufman's claims, and thus has no jurisdiction.

As noted above, the defendants' refusal to initiate rule-making is a final action, and such action is subject to review.

As an initial matter, where a complaint alleges a constitutional violation, the court has authority to review the claims, notwithstanding the fact that judicial review may otherwise be barred by 5 USCS § 701. Argabright v. United States, 35 F.3d 472 (9th Cir. 1994). The APA is not a jurisdictional statute, but, rather, determines whether in specific cases Congress intended to preclude judicial review of the agency action at issue. Stegall v. United States, 19 Cl.Ct. 765 (1990).

There are conflicting views and laws to consider. Since the defendants refused to even consider Kaufman's requests, no agency proceeding has taken place within the meaning of the APA (or, at least, no "action" specific to Kaufman's claims), so the APA is not applicable. Committee of Blind Vendors v. District of Columbia, 28 F.3d 130 (App.D.C. 1994). However, where a plain-

LEG_351960

tiff seeks to compel an agency action which has been unlawfully withheld or unreasonably delayed, a right of action in such cases is expressly created by the APA. Soler v. Scott, 942 F.2d 597 (9th Cir. 1991).

5 U.S.C.S. § 701 does not preclude review of questions pertaining to an agency's jurisdiction or compliance with constitutional or statutory demands. Grace Towers Tenants Assoc. v. Grace Housing Development Fund, 538 F.2d 491 (2nd Cir. 1976); Electricities of North Carolina, Inc. v. Southeastern Power Admin., 774 F.2d 1262 (4th Cir. 1985).

The actions of a government agency may be subject to judicial review, even though the agency's discretion is broad. Doe v. United States Civil Service, 483 F.Supp. 539 (S.D.N.Y. 1980). When reviewing a potential violation of a constitutional right, the court will not give the agency's action the usual deference, but will make an independent assessment. Texas Pub. Util. v. FCC, 183 F.3d 393 (5th Cir. 1999), cert. denied, 120 S.Ct. 2212 (2000).

As discussed by Kaufman above, the Attorney General's discretion in this matter is broad but is not absolute or unfettered. Clearly, Congress never intended for the statute to be rendered useless by the Attorney General's refusal to promulgate the proper rules and procedures. The Attorney General's discretion is limited by the statute to determining the form (i.e., the time, place, and manner) of such renunciations. The Attorney General's refusal to promulgate the proper rules has deprived Kaufman of a protected and fundamental right. Schneider v. State, 308 U.S. 147, 60 S.Ct. 146 (1939); Cantwell v. Connecticut, 310 U.S. 296, 60 S.Ct. 900 (1940); Boddie v. Connecticut, 401 U.S. 371, 379, 91 S.Ct. 780 (1971).

VI.   SERVICE OF PROCESS

The defendants allege that they were not properly served in this action with the summons and complaint.

(8)

351960

Take note that Kaufman had no involvement in the actual service process, so any alleged errors would be the responsibility of the court and/or the U.S. Marshal. The court itself ordered, and arranged for, service with the U.S. Marshal's Service. [See Docket #5-8] Thus, the court must remedy that problem, if indeed such a problem exists. It should also be noted that Kaufman would not have any access to any resources to locate the personal home address of any of the defendants. The residential addresses of government employees are not published in any legal directories available in prison law libraries.

The defendants assert that Rule 4(e) requires that the defendants be served "at his dwelling house or place of abode," and have underlined that section. However, the rule says "OR at his dwelling house ..." The first option states "be delivered to the defendant (or his appointed agent) personally, or ..." There is absolutely no rule which states that a defendant may not be served at his place of business. Technically, a defendant may be served anywhere -- at his home, his business, a restaurant, or even a public restroom if need be. Service at a place of employment is definately permitted under Rule 4(e).

While Kaufman does not have copies of the actual service documents, it is easily understood that either the defendants were personally served by the U.S. Marshal, or, the more likely scenario, that the defendants accepted service via their appointed agents. Thus, they were properly served, and this action cannot be dismissed on that basis.

VII.   QUALIFIED IMMUNITY

The defendants allege that they are entitled to the "complete defense of qualified immunity." That assertion is laughable, and is easily defeated by the defendants' own responses to Kaufman's inquiries. In addition, qualified immunity applies only to monetary relief, not to declaratory or injunctive relief.

(9)

LEGA 351960

Put simply, the statute that is in play (because the United States is currently at war) clearly states that Kaufman may renounce his citizenship by applying to the United States Attorney General. The Attorney General may regulate the time, place, and wording of that renunciation, but <u>may not refuse</u> to consider Kaufman's request. The Attorney General may prescribe the <u>form</u> to be followed, but <u>may not refuse to prescribe any form</u> to be followed. [See Complaint ¶ 39].

The law is clearly established that Kaufman has a fundamental right to renounce his citizenship. [See Complaint ¶ 16-19] United States citizens have a fundamental right to become aliens. <u>Richards v. Secretary of State</u>, 752 F.2d 1413 (9th Cir. 1985); <u>United States ex rel. Wrona v. Karnuth</u>, 14 F.Supp. 770 (D.C.N.Y. 1936). These are not new cases, and so the law has been clearly established for at least several decades.

Kaufman's complaint clearly sets forth sufficient facts to show that Kaufman's constitutional rights have been violated by the defendants, and that those rights were clearly established.

The defendants assert that there is no indication that any named defendant made a decision concerning Kaufman's requests. The requests were clearly and properly addressed to each defendant, and delivered to their offices by United States Postal Service. This included correspondence sent by certified mail to Gonzalez, via <u>restricted</u> delivery. [See Initial Disclosure, Doc. #15, Certified mail receipt #7004-0750-0003-3401-0433] The fact that the defendants have a policy and practice of allowing their employees to intercept any correspondence sent to them cannot shield them in this action. Kaufman fulfilled his part by correctly addressing his requests to the defendants.

The defendants also state "given the fact that § 1481(a)(6) is inoperable," yet offer no proof to show that the statute is, in fact, in operable. The statute clearly states that Kaufman can invoke the statute "when<u>ever</u> the United States shall be in a state of war." Well, the United States <u>is</u> clearly at war right now. Tens of thousands of people are dead, maimed, and wounded; priceless historical artifacts and architecture has been

(10)

LEGA 351960

destroyed; hundreds of billions of tax dollars have been wasted; and the Bush administration -- including defendants Gonzalez, Rice, and Chertoff -- have repeatedly inundated the American public with their war rhetoric. Yet, the defendants are now asserting that the United States is <u>not at war</u>, and so the statute is inoperable? Such a claim is bureaucratic falsehood at its worst, and is only one specific example of Kaufman's reasons for seeking to divest himself of his hated American citizenship.

Any nation which forces any individual to hold citizenship in that country cannot call itself a "democracy." The terrorists should be applauded and rewarded for their attempts to eradicate this country of such corruption and stupidity.

### CONCLUSION

Based upon all of the above, and including the text of Kaufman's complaint and initial disclosures filed in this matter, this action should proceed and be properly presented to a <u>jury</u> for a decision.

Respectfully submitted,

James J. Kaufman, pro se

(11)

PROOF OF SERVICE

James J. Kaufman, plaintiff pro se, hereby states that a copy of the following document(s):

(1) Plaintiff's Response to Defendants' Motion to Dismiss

was sent to the following individuals:

(2) Heather Graham-Oliver, counsel for defendants
(3) Nancy Mayer-Whittington, Clerk, U.S. District Court

on the 9th day of February, 2006, by placing those documents into First Class mailing envelopes and submitting those envelopes to Jackson Correctional institution prison officials for indigent mailing.

Dated this 9th day of February, 2006.

Respectfully submitted,

James J. Kaufman

LEC: 351960