# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued January 8, 2008          Decided May 2, 2008

No. 06-5259

JAMES J. KAUFMAN
APPELLANT

v.

MICHAEL B. MUKASEY, ATTORNEY GENERAL, ET AL.,
APPELLEES

---

Appeal from the United States District Court
for the District of Columbia
(No. 05cv01631)

---

    *Brendan F. Quigley*, Student Counsel, argued the cause as *amicus curiae* in support of appellant. With him on the briefs was *Steven H. Goldblatt*, appointed by the court, and *Jeremy M. McLaughlin*, Student Counsel.

    *James J. Kaufman*, pro se, filed briefs.

    *Heather Graham-Oliver*, Assistant U.S. Attorney, argued the cause for appellees. With her on the brief were *Jeffrey A. Taylor*, U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney.

    Before: RANDOLPH and ROGERS, *Circuit Judges*, and

2

EDWARDS, *Senior Circuit Judge*.

   Opinion for the Court by *Circuit Judge* ROGERS.

   Opinion concurring in part and dissenting in part by *Circuit Judge* RANDOLPH.

   ROGERS, *Circuit Judge*: James Kaufman seeks to renounce his United States citizenship pursuant to section 349 of the Immigration and Nationality Act, 66 Stat. 163 (1952) ("the Act"), codified at 8 U.S.C. § 1481. The Act provides that a citizen shall lose his nationality upon making a formal renunciation request of the Attorney General "whenever the United States shall be in a state of war and the Attorney General shall approve such renunciation as not contrary to the interests of national defense." 8 U.S.C. § 1481(a)(6). When Kaufman failed to receive the response he sought to his renunciation request, he filed suit alleging the violation of his statutory and constitutional rights. Kaufman now seeks reversal of the district court's dismissal of his complaint, contending that he is entitled to a court order compelling the Attorney General to carry out his duty under section 1481(a)(6). The government's brief responds that mandamus will not lie in view of the discretionary nature of the Attorney General's duty under the statute. At oral argument, however, the government contended that the Attorney General's authority under the Act was transferred to a bureau within the Department of Homeland Security and that Kaufman did receive a response to his renunciation request from that bureau indicating that he is ineligible for relief under section 1481(a)(6).

   We remand the case to the district court for a determination, in the first instance, of whether the Attorney General retains his authority under section 1481(a)(6). If the district court determines that the Homeland Security Act of 2002, Pub. L. No.

3

107-296, 116 Stat. 2135 (Nov. 25, 2002), codified at 6 U.S.C. § 101 *et seq*. ("Homeland Security Act"), divested the Attorney General of this authority, it shall determine whether the Department of Homeland Security's response to Kaufman is statutorily permissible.

**I.**

Beginning in July 2004, Kaufman wrote a series of letters to various United States government entities, including the Attorney General, the State Department, and the United States Citizenship and Immigration Services Bureau ("Bureau" or "USCIS") of the Department of Homeland Security, in an attempt "to initiate the renunciation of [his] United States citizenship, pursuant to the Immigration and Nationality Act, codified in 8 U.S.C. § 1481(a)(6)."[1] Most of the addressees,

---

[1] Letter from James J. Kaufman to John Ashcroft, Attorney General (July 25, 2004). Section 1481(a)(6) provides:

> A person who is a national of the United States whether by birth or naturalization, shall lose his nationality by voluntarily performing any of the following acts with the intention of relinquishing United States nationality –
>
> . . .
>
> (6) making in the United States a formal written renunciation of nationality in such form as may be prescribed by, and before such officer as may be designated by, the Attorney General, whenever the United States shall be in a state of war and the Attorney General shall approve such renunciation as not contrary to the interests of national defense[.]

4

including the Attorney General, either failed to respond to Kaufman or referred him to other government entities. The prominent exception was the Bureau, which in multiple letters rejected his request on its merits, noting an apparent intent on Kaufman's part to remain in the United States and concluding that he thus failed to comply with section 349 of the Act.[2] After some months of correspondence with government departments, Kaufman concluded that the Bureau had "avoided answering [his] questions, referred [him] to offices which do not have jurisdiction, and . . . basically given [him] the 'runaround.'"[3]

On August 12, 2005, Kaufman, acting *pro se*, filed suit, alleging that the Attorney General and the Secretaries of State and Homeland Security had violated his statutory and constitutional rights by refusing to allow him to renounce his citizenship pursuant to section 1481(a)(6). He sought a declaration that the Attorney General has jurisdiction over renunciation under section 1481(a)(6) and has failed to comply with his statutory duty.[4] The defendants moved to dismiss on

---

8 U.S.C. § 1481(a)(6).

[2] *See, e.g.*, Letter from Janice M. Jackson, Information Program Specialist, USCIS, to James J. Kaufman (May 26, 2005). The Bureau's conclusion that Kaufman intended to remain in the United States was almost certainly related to his then imprisonment in a Wisconsin correctional facility, Amicus Br. at 2. He is currently on parole, *id.* at 3, and is barred from leaving the United States until the year 2027, Appellant's Br. at 14.

[3] Letter from James J. Kaufman to Phyllis V. Bell, Information Liaison Specialist, USCIS (May 11, 2005).

[4] In response to Kaufman's Freedom of Information Act request for information on renunciation under section 1481(a)(6), the Justice Department advised that the Office of the Attorney General

5

grounds of sovereign immunity and the inapplicability of the mandamus statute, 28 U.S.C. § 1361, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.* Kaufman subsequently withdrew his claim for monetary damages. The district court dismissed the complaint, ruling that the Attorney General's discretionary decision under section 1481(a)(6) is judicially unreviewable. Kaufman appeals, and our review is *de novo*. *Tootle v. Sec'y of the Navy*, 446 F.3d 167, 173 (D.C. Cir. 2006); *see also Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006).

**II.**

The APA provides that "[a] person suffering legal wrong because of agency action . . . within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.[5] "Agency action" encompasses a "failure to act" for purposes of judicial review. *Id.* § 551(13). "A 'failure to act' is not the same thing as a 'denial.' The latter is the agency's act of saying no to a request; the former is simply the omission of an action without formally rejecting a request . . . ." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63 (2004). The APA further authorizes the court to "compel agency action unlawfully

---

does not handle citizenship matters. Letter from Carrie Walker, Deputy Director, Office of Information and Privacy, U.S. Department of Justice, to James J. Kaufman (May 26, 2005).

[5] The APA waives sovereign immunity for claims against government agencies and officials, *see Clark v. Library of Congress*, 750 F.2d 89, 102 (D.C. Cir. 1984); *see also Trudeau v. FTC*, 456 F.3d 178, 186 (D.C. Cir. 2006), even when not brought pursuant to the APA, *Chamber of Commerce v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996). In view of Kaufman's withdrawal of his claims for monetary relief, the government no longer contends that sovereign immunity bars his complaint.

6

withheld or unreasonably delayed." 5 U.S.C. § 706(1). However, consistent with underlying separation of powers considerations, "a claim under [section] 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *S. Utah Wilderness Alliance*, 542 U.S. at 64 (emphasis in original). Thus, contrary to the district court's ruling, when an agency is compelled by law to act, but the manner of its action is left to the agency's discretion, the "court can compel the agency to act, [although it] has no power to specify what th[at] action must be." *Id.* at 65.

**A.**

As an initial matter, we address the contention, raised by the government during oral argument but not included in any party's brief, that the Attorney General's powers under section 1481(a)(6) have been transferred to the Department of Homeland Security. Oral Arg. Tape at 10:39 (Jan. 8, 2008). It is prudent for the court to consider this threshold question, especially given Kaufman's request for a declaration that the Attorney General retains authority under section 1481(a)(6). If the Homeland Security Act realigned citizenship and immigration functions among the government agencies, transferring section 1481(a)(6) authority from the Attorney General to another agency, then the question would become not whether the Attorney General failed to respond but whether the Bureau's responses were legally sufficient.

Prior to 2002, the Attorney General had delegated his authority under the Act to the Immigration and Naturalization Service ("INS"). 8 C.F.R. § 100.2 (1994). In 2002 however, Congress abolished the INS when it enacted the Homeland Security Act, 6 U.S.C. § 291, and assigned to the Department of Homeland Security various functions previously performed by other government agencies. Specifically, Congress created

7

within the new department a Directorate of Border and Transportation Security, *id.* § 201, and the Bureau, *id.* § 271, vesting these divisions with broad authority encompassing that previously held by the INS, *see id.* §§ 202(3), 271(b)(5). While we have found no explicit reference to section 1481(a)(6), the Homeland Security Act provides in sweeping terms that adjudication of visa petitions, naturalization petitions, and "[a]ll other adjudications performed by the [INS]" are "transferred from the Commissioner of [the INS] to the Director of the Bureau." *Id.* § 271(b). Additionally, the Homeland Security Act expressly provides that the Attorney General has authority over certain immigration functions specifically relating to immigration courts, *id.* § 521,[6] suggesting that the Attorney General may no longer retain other functions under the Act that he had delegated to the INS. *Cf. Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972)) (alteration in original)).

There thus exists the possibility that the powers ascribed to the Attorney General by the briefs on appeal are now vested in

---

[6] The Executive Office for Immigration Review ("EOIR") oversees immigration courts in the United States, *see* 8 C.F.R. § 1003.0, and "shall be subject to the direction and regulation of the Attorney General under section 1103 of the [Act]," 6 U.S.C. § 521(a). The Homeland Security Act amends 8 U.S.C. § 1103(g) to provide that the Attorney General retains the "authorities and functions under this Act and all other laws relating to the immigration and naturalization of aliens as were exercised by the [EOIR], or by the Attorney General with respect to the [EOIR], on the day before the effective date of [a bill entitled] the Immigration Reform Accountability and Security Enhancement Act of 2002."

8

the Bureau. In addition, neither Kaufman nor *amicus* have presented any argument challenging the Bureau's position that, as a matter of law, because Kaufman intended to remain in the United States, he was ineligible for renunciation under section 1481(a)(6).[7] This unrebutted legal interpretation by the Bureau and the history of the enactment of section 1481(a)(6), *see Tadayasu Abo v. Clark*, 77 F. Supp. 806, 809 (N.D. Cal. 1948), raise additional questions regarding section 1481(a)(6)'s availability to Kaufman. However, our review has been constrained by the fact that neither the parties' briefs nor *amicus*'s brief nor the district court addressed the threshold question of whether the Attorney General retains authority under section 1481(a)(6) after enactment of the Homeland Security Act. In these circumstances, it is appropriate to remand the case to the district court to determine, in the first instance, whether the Attorney General retains authority under this section. *Cf. Felter v. Kempthorne*, 473 F.3d 1255, 1261 (D.C. Cir. 2007). If the district court concludes that the Attorney General does not, the district court must determine

---

[7] To support its position, the Bureau cited section 1483(a), which provides:

> Except as provided in paragraphs (6) and (7) of section 1481(a) of this title, no national of the United States can lose United States nationality under this chapter while within the United States or any of its outlying possessions, but loss of nationality shall result from the performance within the United States or any of its outlying possessions of any of the acts or the fulfillment of any of the conditions specified in this part if and when the national thereafter takes up a residence outside the United States and its outlying possessions.

8 U.S.C. § 1483(a).

9

whether the Bureau's interpretation of the Act is permissible.

**B.**

Should the district court on remand conclude that the authority to adjudicate renunciations of United States citizenship was not transferred by the Homeland Security Act, the question of the Attorney General's authority under section 1481(a)(6) will again be at issue. The parties and *amicus* have presented extensive arguments on this issue. We cannot decide the issue at this juncture because it has yet to be determined whether the Attorney General retains authority under section 1481(a)(6). Because the matter has been fully briefed and argued, however, we offer several observations in the interest of judicial economy.[8]

As Kaufman and *amicus* read section 1481(a)(6), the question presented is whether the Attorney General may ignore a citizen request that Congress has authorized. *See* Appellant's Br. at 10-11; Amicus Br. at 14. They contend that the Attorney General has a duty to respond and that this court should compel such a response. By contrast, the government contends in its brief that mandamus will not lie because section 1481(a)(6) vests discretion in the Attorney General to prescribe a form and designate an official, neither of which has occurred.[9] Further,

---

[8] *See Delgado v Mukasey*, 508 F.3d 702, 709 (2d Cir. 2007); *Mozes v. Mozes*, 239 F.3d 1067, 1084-85 (9th Cir. 2001); *Connors v. Incoal, Inc.* 995 F.2d 245, 253 (D.C. Cir. 1993); *Nat'l Fed'n of Fed. Employees v. Weinberger*, 818 F.2d 935, 942 (D.C. Cir. 1987). *Cf. James v. Mukasey*, No. 06-5163-ag, 2008 WL 763158, at *7 (2d Cir. Mar. 25, 2008).

[9] Section 1481(a)(6) was added to the Act in 1944 to allow the continued detention of U.S. citizens of Japanese ancestry during World War II in a manner then thought would avoid "doing violence

10

the government contends that the determination of "national security" involves policy judgments in which courts are not to be overly involved. Citing *Koos v. Helm*, 204 F. Supp. 2d 1099, 1108 (W.D. Tenn. 2002), the government offers that such discretion, in the absence of statutory or regulatory standards, precludes enforcement under the APA.

The government's position seems problematic given that the government has not pointed to anything to suggest that by authorizing the Attorney General to prescribe a form and designate an official to receive section 1481(a)(6) requests Congress intended to make these actions preconditions to the operability of the statute rather than matters of administrative convenience. Indeed, the Department has relied on the statute in support of a court-approved plea agreement in which the defendant was allowed to renounce his citizenship under section 1481(a)(6) in exchange for the dismissal of the pending criminal charges. *United States v. Cabrera-Rojas*, No. CR-06-248-S-BLW, 2007 WL 778181, at *2 (D. Idaho Mar. 13, 2007). This was done even though there was nothing to indicate that the Attorney General had prescribed a form or designated an official to receive the defendant's section 1481(a)(6) renunciation. This approach is unsurprising given that the Office of Legal Counsel has advised that "no regulation for accepting a formal renunciation within the United States pursuant to this provision . . . is necessary," as the requisite form could be produced by the Attorney General at the time a citizen seeks to exercise that right. John C. Yoo, Survey of the

---

to the Constitution," *Tadayasu Abo,* 77 F. Supp. at 809. The INS in the Justice Department promulgated regulations providing an administrative process for renunciation of citizenship pursuant to the statute. *See* 9 Fed. Reg. 12,241 (Oct. 10, 1944). However, those regulations were effective only "until cessation of the present war unless sooner determined by the Attorney General." *Id.*

11

Law of Expatriation, Memorandum Opinion for the Solicitor General n.9 (June 12, 2002), *available at* http://www.usdoj.gov/olc/ expatriation.htm (last visited Mar. 31, 2008). *See generally Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). Additionally, although determinations regarding national security are matters that courts acknowledge are generally beyond their ken, *see, e.g.*, *INS v. Aguirre-Aguirre*, 526 U.S. 415, 424-25 (1999), a failure to make a determination can be reviewable under the APA, *see S. Utah Wilderness Alliance*, 542 U.S. at 63, 65. Section 1481(a)(6), on its face, is not the "typical" enforcement statute addressed by *Heckler v. Chaney*, 470 U.S. 821 (1985), insofar as Congress has authorized the citizen, not the government, to initiate a request for renunciation. In sum, we do not understand the government to suggest that a congressionally created right can be nullified by government inaction.

                              *Reversed and remanded.*

RANDOLPH, *Circuit Judge*, concurring in part and dissenting in part: I cannot join part II.B of the opinion. The court there pronounces on issues that may not be in the case. If the Attorney General's discretionary power to approve or reject renunciations of citizenship has been transferred to the Department of Homeland Security, everything the court writes in part II.B is irrelevant. Nothing the court says there is essential to our judgment. The court's "by the way" musings are thus simply dicta. Why the court includes them in an otherwise careful opinion is mystifying. They do not represent the sort of in-depth analysis that would be needed to determine the difficult question whether mandamus would lie to force the Attorney General to exercise discretionary power under 8 U.S.C. §1481(a)(6). Since we do not even know if the Attorney General still has that power, I dissent from part II.B.