United States District Court
For the District of Columbia

James J. **Kaufman**,
        Plaintiff,

-vs-                                         Case No. <u>05-cv-1631 (RWR)</u>

Michael **Mukasey**, Michael **Chertoff**,
and Condoleezza **Rice**,
        Defendants.

**Brief of Plaintiff**

      James J. Kaufman, plaintiff pro se, hereby submits this brief in support of his claims in this action, and in accordance with the orders issued by the United States Court of Appeals for the District of Columbia Circuit, <u>Kaufman v. Mukasey, et al.</u>, No. 06-5259, 524 F.3d 1334 (D.C.Cir. 2008), issued on May 2, 2008.

      In support of this brief, Kaufman relies on the attached affidavit, and on all documents previously submitted in this action (in both the district and appellate courts).

I.      **Issues Presented**

      1.      **What agency or official retains jurisdiction over requests for renunciation pursuant to 8 U.S.C. § 1481(a)(6)?**

      There are two agencies with possible jurisdiction over requests for loss of citizenship pursuant to 8 U.S.C. § 1481(a)(6), and each agency has compelling evidence to support claims of jurisdiction.

      In the first instance, the text of the statute specifically refers to the Attorney General. It was in reliance of the precise wording of the statute that Kaufman sent his multiple requests for loss of citizenship to Attorneys General John Ashcroft and Alberto Gonzalez.

      At no time did the Attorney General's office inform Kaufman that this jurisdiction had been transferred to another agency. The closest any official came to informing Kaufman of any such transfer was a letter from Carrie Walker, Deputy Director OIP, Dept. of Justice, dated May 26, 2005. [Opinion 5/2/08, note 4] In that letter, Walker merely stated that the Office of the Attorney General does not handle citizenship matters. There was no explanation, no referral to any order or statute, nothing to indicate to Kaufman that this response was any different from any of the previous responses he had received which erroneously referred to him other agencies, such as to the Dept. of State. [Complaint, ¶¶ 24, 26]

At no time since the filing of this action has any defendant, nor defendants' counsel, asserted that the Attorney General's authority over such renunciation requests had been transferred. The defendants' briefs submitted to both the district and appellate courts are completely silent on this issue. Had the defendants raised this issue in their briefs, Kaufman would have addressed the issue in his own arguments.

As such, based on the text of the statute, and on the evidence and all submissions by the defendants, the Attorney General does retain jurisdiction and authority over Kaufman's multiple written requests for renunciation of his United States citizenship.

At oral argument in the Court of Appeals, the defendants raised an entirely new issue, never presented in briefs, that the Attorney General does not have jurisdiction over such requests, that jurisdiction was delegated to the Immigration and Naturalization Service (INS), and then was transferred to the new Dept. of Homeland Security, U.S. Citizenship and Immigration Services (USCIS). In light of this entirely new argument, the Court of Appeals remanded this action so that the issue could be argued.

Given this new argument, there are two possible outcomes. It will be taken as given that the Attorney General did delegate his jurisdiction over such requests for renunciation to the Commissioner of the INS. 8 C.F.R. § 100.2(a) (1994). However, the INS was abolished by the Homeland Security Act of 2002. 6 U.S.C. § 291(a). What, then, was done with the authority delegated to the INS by the Attorney General?

As stated by the Court of Appeals, the Homeland Security Act makes no specific reference to 8 U.S.C. § 1481(a)(6). Because the Homeland Security Act does not refer explicitly to 8 U.S.C. § 1481(a)(6), it could be construed that Congress did not intend to transfer the Attorney General's delegated authorities to the USCIS. In other words, when the INS was abolished, only those powers which Congress had granted by statute to the INS were transferred to the USCIS. Because the INS no longer existed, any powers which the Attorney General had previously delegated to the INS would automatically revert back to the Attorney General. Arguably, Congress could not have intended a domino effect, resulting in delegated powers from all other agencies being lumped together with those powers granted by statute, and then transferred to the USCIS in one lump.

There is ample evidence and legal support for the argument that authority was not transferred to USCIS for such requests. As the Court of Appeals cited, "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." Russello v. United States, 464 U.S. 16, 23 (1983), quoting United States v. Wong Kim Bo, 472 F.2d 720, 722 (5th Cir. 1972).

In the case of the Homeland Security Act, Congress did not explicitly modify the law regarding renunciations under 8 U.S.C. § 1481(a)(6). The fact that Congress did not amend that statute, replacing the term "Attorney General" with another officer (such as Director of the USCIS) clearly shows that Congress did not intend to transfer that authority. If a transfer of powers were intended, it can be presumed that Congress would have amended this statute to reflect this intent.

The second possibility is that, under the Homeland Security Act, powers delegated to the INS, even those not formally granted by statute, were transferred to the USCIS. The defendants apparently rely on two statutes to support this argument: 6 U.S.C. §§ 202 and 271.

The first, 6 U.S.C. § 202, actually appears to go against the defendants' argument, as the statute enumerates seven types of powers transferred, and each clearly involves immigration and/or entry to the United States. As such, 6 U.S.C. § 202 cannot be construed, even remotely, to transfer powers regarding expatriation, renunciation of citizenship, or <u>exit</u> from the United States.

The second, 6 U.S.C. § 271, is the <u>only</u> piece of evidence that supports the defendants' claims. In 6 U.S.C. § 271(b)(5), the authority is transferred from the Commission of the INS to the Director of the USCIS for "all other adjudications performed" by the INS. However, we then run into the same problem: does this include only statutorily granted powers, or does it also include delegated powers? If so, why then did Congress not amend the text of 8 U.S.C. § 1481(a)(6) to reflect this transfer? This is a conflict which must be resolved by the Court. If delegated powers were lumped together with statutorily granted powers, this would result in the above-mentioned domino effect, as Congress could not have been expected to know about, consider, and track each and every power delegated from one agency to another, and consider the effect of the new Homeland Security Act on each of those delegated powers. In any event, this new argument, while plausible, is not supported by the defendants' prior submissions to the court, nor have the defendants provided <u>any</u> justification for <u>not</u> raising this argument at any time in the past four years, since Kaufman submitted his first request.

The actual outcome of this jurisdictional issue is not really relevant in the big picture, as Kaufman does not care which agency issues the paperwork granting his loss of citizenship, he only cares that the paperwork actually be issued. And, as Kaufman named both the Attorney General and the Secretary of Homeland Security as defendants, the determination of jurisdiction does not affect the outcome of this action – the loss of Kaufman's citizenship.

2.   **If the Attorney General retains jurisdiction, are a response and decision required by law?**

As the Court of Appeals clearly stated, this issue has been fully briefed and argued. Kaufman argues that <u>some</u> kind of decision on his request was required, either yea or nay, and that the government <u>must</u> issue a decision. Defendants argue that, because the statute gives the Attorney General discretion as to prescribing a form for such renunciations, and designating an officer to receive such requests, that this renders the <u>entire</u> statute discretionary, and the fact that the Attorney General has <u>not</u> done so renders the remainder of the statute inoperable, and therefore they are <u>not</u> required to respond to the requests in any way.

The Court of Appeals decision already considered and answered this issue. In that decision, the Court noted that Congress apparently made these two items discretionary as a matter of "administrative convenience" for the Attorney

General, rather than preconditions to the operability of the statute. That is, citizens seeking to renounce their citizenship under 8 U.S.C. § 1481(a)(6) must use the form prescribed if such a form actually has been prescribed, and the request must be submitted to the designated officer if such an officer has been designated. Absent such a prescribed form, and absent such a designated officer, the statute apparently allows for any written request for renunciation that is submitted to the Attorney General, so long as the request makes the intent of the communication clear.

In support of this argument are the defendants' own actions. As the Court of Appeals noted, the Dept. of Justice allowed a citizen to renounce his citizenship pursuant to 8 U.S.C. § 1481(a)(6), despite the fact that the Attorney General had not prescribed a form or designated an officer. See United States v. Cabrera-Rojas, No. 06-CR-248-S-BLW, 2007 WL 778181 (D. Idaho Mar. 13, 2007). On a side note, it would be interesting to discover which agency signed those documents agreeing to the renunciation. If signed by the Department of Justice, that would indicate that the Attorney General retains jurisdiction. And, in 2002, the Dept. of Justice Office of Legal Counsel issued an opinion, stating that no such prescribed form or designated officer were necessary as prerequisites to renunciation under this statute. See www.usdoj.gov/olc/expatriation.htm, note 9.

Having addressed the only two elements of the statute which are discretionary (but which are not relevant to this action), we turn now to the remaining two elements, which are clearly not discretionary.

The first non-discretionary element is that the United States must be in a "state of war." This element has clearly been met, as the district court ruled on June 20, 2006. [Opinion 5/2/08 – Docket 21] Therefore, there is no need to rehash that issue here.

The second non-discretionary element is that which the defendants focus upon: "the Attorney General shall approve such renunciation as not contrary to the interests of the national defense." The defendants argue that this places no duty on the Attorney General (or USCIS?) to make any decision, that there is discretion to simply ignore the request, that there is no time limit specified in which a decision must be made (if at all), and that the determination of "national security" involves issues which the courts should not become involved.

Again, the Court of Appeals appears to have already addressed these issues, as part of the official decision and at oral argument, in Kaufman's favor.

The phrase "shall approve" means that a decision shall be made, either yea or nay. The wording supports Kaufman's argument that, unless the Attorney General explicitly finds that a threat to the national defense, Kaufman's request "shall [be] approve[d]." As to the time limit, that was also addressed by the court. No time limit does not mean a decision can be postponed indefinitely. It means that a decision must be made within a reasonable amount of time. As the Court of Appeals noted, in Kaufman's case, it had been several years since Kaufman's first request. That is clearly unreasonable.

Lastly, the issue of the "national defense." The court should take note that, while the statute is worded as "national defense," the defendants argue that issue of "national security." The two terms are not, by definition, interchangeable.

At no point in this action has any government official made any claims, nor produced any evidence, that Kaufman's renunciation of his citizenship affects, in any way, the national defense (or national "security," whichever term you want to use). Kaufman himself raised the issue, on multiple occasions, stating that he holds no animosity towards the American people, he simply wishes to permanently leave, and never return. All evidence indicates a peaceful individual who only wants one thing – to not be a citizen of the United States. In fact, Kaufman is a total pacifist, and has never in his 34 years been in even a single physical altercation, or committed any acts of violence. Given this, there can be no support for any claim that his renunciation would be "contrary to the interests of the national defense."

3. **If jurisdiction is held by USCIS, were their responses statutorily permissible?**

In response to a multitude of letters sent by Kaufman, to both the Attorney General and to the USCIS, Kaufman received several replies, each from the USCIS, and each consistent. In those replies, USCIS officials merely quoted from the statute, 8 U.S.C. § 1481(a), making a special emphasis on paragraph (5), a section which did not apply to Kaufman's requests. USCIS officials also stated that, because they interpreted Kaufman's requests to mean that he intended to remain in the United States, the requests did not comply with the statute and he had therefore not renounced his citizenship. Each reply focused upon the requirement that a citizen must first travel to a foreign nation before he could renounce his citizenship. However, that is a requirement for renunciations under paragraphs (1) through (5) of the statute, not under paragraph (6). The statute in question, 8 U.S.C. § 1481(a)(6), clearly begins: "making in the United States ..." At no time is Kaufman required to leave the boundaries of the United States as a precondition to renunciation.

The defendants make another error, in attempting to rely on 8 U.S.C. § 1483(a) to support their position. In all fairness, the Court of Appeals appears to make the same error. [Opinion 5/2/08, note 7] Defendants are interpreting that statute to read that no citizen may lose his nationality while within the United States, and must be outside the United States for loss of citizenship to go into effect. Their error is in ignoring the first six words of the statute: "Except as provided in paragraph (6) ..." of § 1481(a). The requirement that a citizen must leave the country as a precondition applies only to paragraphs (1) through (5) of § 1481(a). Kaufman's request was under, and this action involves, the exception of paragraph (6). As such, the statute relied upon by the defendants supports Kaufman's claims, not the claims of the defendants.

Defendants make a final error, asserting that Kaufman has an "apparent" intent to remain in the United States. At no time has Kaufman made any such claim, neither explicitly or by implication. This was a fiction, created by USCIS staff, in their replies to Kaufman's requests. There is no factual support for this assertion, and defendants have not, and cannot, produce any evidence to support this assertion.

It has <u>always</u> been Kaufman's intent to leave the United States as soon as legally possible, and to <u>never</u> return to this country. Upon receiving the loss of citizenship, Kaufman intends to seek voluntary deportation as an alien (since, as an alien, he is not eligible for a United States passport). Kaufman has sent multiple communications to defendants' counsel, stating that he is willing to voluntarily dismiss this action if they were to grant his loss of citizenship and deport him immediately. None of these facts support the defendants' assertion that Kaufman "intends" to remain in the United States.

As a final note on this issue, it is important to note that the "intent" of Kaufman is not relevant, because it is not one of the elements of the statute. The elements of the law are as promulgated by Congress, and defendants have no authority to create additional requirements. Even if "intent" were an element, Kaufman is being held in the United States involuntarily, against his will, so again the defendants' arguments of "intent" work in Kaufman's favor.

## CONCLUSION

Based upon all of the facts and arguments set forth herein, in addition to the evidence, documents, and arguments already filed in this action, it is clear that Kaufman is entitled to the relief he has requested: the loss of his United States citizenship. Whether that loss is granted by the Attorney General or by the Department of Homeland Security is not important. All of the elements of the statute have been met by Kaufman. All that is required now is a signature from the government.

Dated this 26th day of August, 2008.

Respectfully submitted,

*James J. Kaufman* (signature)

James J. Kaufman, pro se
728 Second Avenue
Eau Claire, WI 54703

RECEIVED
SEP 0 3 2008
Chambers of Judge Roberts

RECEIVED
SEP 0 3 2008
Chambers of Judge Roberts

Proof of Service

James J. Kaufman, plaintiff pro se, hereby states that on this date, copies of the following documents:

1. Brief of Plaintiff
2. Affidavit of James J. Kaufman

Were sent by First-Class mail by deposit into the Eau Claire County Jail mailbox, to the following parties:

1. Heather Graham-Oliver, Assistant U.S. Attorney, 555 Fourth Street NW, Washington DC 20530-0001
2. Hon. Richard W. Roberts, U.S. District Court, 333 Constitution Avenue NW, Washington DC 20001

Dated this 27th day of August, 2008.

Respectfully submitted,

*James J. Kaufman*
James J. Kaufman