# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JAMES J. KAUFMAN, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 05-1631 (RWR) |
| ERIC H. HOLDER, JR., in his official capacity as Attorney General of the United States, *et al.*, | ) | |
| Defendants.[1] | ) | |

## DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56, Fed. R. Civ. P., Defendants respectfully move this Court to enter an Order granting summary judgment to Defendants with respect to the issue of whether DHS's response to Plaintiff's request to renounce his United States nationality pursuant to 8 U.S.C. § 1481(a)(6) is statutorily permissible ("second remand issue"). There is no genuine issue as to any material fact, and Defendants are entitled to judgment as a matter of law.

Pursuant to Local Civil Rules 7 and 56.1, Defendants file a memorandum of points and authorities, a proposed Order, a statement of facts, and a notice of filing. Defendants also rely on the record in this case, as lodged with the Court.

Defendants respectfully pray that this Court enter an Order granting Defendants' Motion for Summary Judgment regarding the second remand issue.

//

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Eric H. Holder, Jr., Janet A. Napolitano, and Hillary Rodham Clinton, are automatically substituted for the previously named Defendants by appointment within their respective departments.

**Date:**  April 3, 2009

Respectfully submitted,

JEFFREY A. TAYLOR
D.C. Bar # 498610
United States Attorney

RUDOLPH CONTRERAS
D.C. Bar # 434122
Assistant United State Attorney

HEATHER D. GRAHAM-OLIVER
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W.
Washington, D.C.  20530
(202) 305-1334

MICHAEL F. HERTZ
Acting Assistant Attorney General

DAVID J. KLINE
D.C. Bar # 203646
Director, District Court Section

VICTOR M. LAWRENCE
D.C. Bar # 449052
Principal Assistant Director, District Court Section


*/s/ Derek C. Julius*
DEREK C. JULIUS
Trial Attorney, District Court Section
Office of Immigration Litigation
United States Department of Justice
Ben Franklin Station, P.O. Box 868
Washington, D.C. 20044
(202) 532-4323

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **JAMES J. KAUFMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. 05-1631 (RWR)** |
| | ) | |
| **ERIC H. HOLDER, JR.,** in his official capacity | ) | |
| as Attorney General of the United States, ***et al.,*** | ) | |
| | ) | |
| **Defendants.**[2] | ) | |
| | ) | |

**STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**

In compliance with Local Rule 7(m), Defendants submit that the following facts are not in genuine dispute and demonstrate that Defendants are entitled to summary judgment on the issue of whether the Department of Homeland Security's ("DHS") response to Plaintiff's request to renounce his United States nationality pursuant to 8 U.S.C. § 1481(a)(6) is statutorily permissible:

1.      James Kaufman currently is a citizen of the United States of America.  Complaint ("Compl.") ¶7.

2.      James Kaufman seeks to renounce his United States nationality under 8 U.S.C. § 1481(a)(6).  *Id.*

3.      James Kaufman sent a letter to United States Citizenship and Immigration Services ("USCIS"), a component of DHS, on September 8, 2008, in which he requests that the

---

[2]      Pursuant to Fed. R. Civ. P. 25(d), Eric H. Holder, Jr., Janet A. Napolitano, and Hillary Rodham Clinton, are automatically substituted for the previously named Defendants by appointment within their respective departments.

agency act on his request to renounce his United States nationality.  Letter from James

Kaufman to Director, USCIS (Sept. 8, 2008).  *See* Dkt. # 57, Exhibit 2.

4.     James Kaufman sent another letter to USCIS on October 20, 2008, demanding a response

to his previous correspondence seeking renunciation of his United States nationality.

Letter from James Kaufman to Director, USCIS (Oct. 20, 2008) Dkt. # 54, Exhibit 2.

5.     DHS issued a response to Plaintiff's renunciation request on January 27, 2009, in which

DHS denied his request on the ground that 8 U.S.C. § 1481(a)(6) currently is not

operative because the United States is not in a "state of war" as that term is used in the

Immigration and Nationality Act.  Dkt. # 65, Exhibit 1.  DHS further explained that, for

purposes of 8 U.S.C. § 1481(a)(6), the term "state of war" means a Congressionally

declared state of war.  *Id*.

6.     The United States currently is not in a Congressionally declared state of war.

**Date:** April 3, 2009                          Respectfully submitted,

JEFFREY A. TAYLOR
D.C. Bar # 498610
United States Attorney

RUDOLPH CONTRERAS
D.C. Bar # 434122
Assistant United State Attorney

HEATHER D. GRAHAM-OLIVER
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W.
Washington, D.C.  20530
(202) 305-1334

2

MICHAEL F. HERTZ
Acting Assistant Attorney General

DAVID J. KLINE
D.C. Bar # 203646
Director, District Court Section

VICTOR M. LAWRENCE
D.C. Bar # 449052
Principal Assistant Director, District Court Section


*/s/ Derek C. Julius*
DEREK C. JULIUS
Trial Attorney, District Court Section
Office of Immigration Litigation
United States Department of Justice
Ben Franklin Station, P.O. Box 868
Washington, D.C. 20044
(202) 532-4323

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

<table>
<tr><td>

**JAMES J. KAUFMAN,**

    **Plaintiff,**

v.

**ERIC H. HOLDER, JR.,** in his official capacity
as Attorney General of the United States, *et al.,*

    **Defendants.**[3]

</td>
<td>

)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)

</td>
<td>

**Civil Action No. 05-1631 (RWR)**

</td></tr>
</table>

### MEMORANDUM IN SUPPORT OF DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Defendants, by and through their attorneys, hereby move this Court to enter an order

granting summary judgment in their favor on the issue of whether the Department of Homeland

Security's ("DHS") response denying Plaintiff's request to renounce his United States nationality

pursuant to 8 U.S.C. § 1481(a)(6) is statutorily permissible.

### STATEMENT OF THE CASE

Plaintiff brought this action on October 26, 2005, after an unsuccessful attempt to

renounce his United States nationality under 8 U.S.C. § 1481(a)(6), Immigration and Nationality

Act ("INA") § 349(a)(6).  *See generally* PACER Docket ("Dkt.") #1.  He sought a writ of

mandamus to compel Defendants to grant his request and other declaratory relief.  *Id*.

In prior proceedings before this Court, Defendants moved to dismiss the action.  Dkt. #

13.  This Court granted Defendants' motion to dismiss and held that the Attorney General's

---

[3]  Pursuant to Fed. R. Civ. P. 25(d), Eric H. Holder, Jr., Janet A. Napolitano, and Hillary Rodham Clinton, are automatically substituted for the previously named Defendants by appointment within their respective departments.

decision regarding an application to renounce nationality was a discretionary one and sovereign immunity precluded Plaintiff's claim.  Dkt. # 20.

Plaintiff appealed the Court's decision, and the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit Court") reversed the decision and remanded the case for further consideration.  *Kaufman v. Mukasey, et al.*, 524 F.3d 1334 (D.C. Cir. 2008). Specifically, the Circuit Court instructed the Court to address two issues in the first instance:

> (1)     Whether the Attorney General retains his authority under 8 U.S.C. § 1481(a)(6) or whether that authority has been transferred to the Department of Homeland Security ("DHS"); and

> (2)     If the duty to act under 8 U.S.C. § 1481(a)(6) now rests with DHS, whether the response DHS provided Plaintiff was statutorily permissible.

*Id*. at 1336; *see also* Order of Judge Richard W. Roberts (July 8, 2008), Dkt. # 28.

On October 24, 2008, Plaintiff filed a motion for summary judgment on the two remand issues, among other issues.[4]  Dkt. # 46.  On November 11, 2008, Defendants filed their opposition to Plaintiff's motion for summary judgment.  Dkt. # 55.  On this same date, Defendants filed a motion for summary judgment regarding the issue of whether the Homeland Security Act transferred the authority over 8 U.S.C. § 1481(a)(6) renunciation requests from the Attorney General to DHS.  Dkt # 54.  Because Plaintiff sent additional correspondence to DHS seeking to renounce his United States nationality following the April 3, 2009 D.C. Circuit Court's remand, Defendants moved the Court to hold briefing of the second remand issue in abeyance until DHS responded so that the Court could consider DHS's most recent response.  *Id*.

---

[4]  Plaintiff's motion for summary judgment contains arguments regarding a number of issues that are irrelevant to the Court's determination of the remand issues as sought by the D.C. Circuit Court.  The Government does not respond to these extraneous arguments in its brief and denies that these extraneous issues have any relevance to the current briefing.

On November 21, 2008, in response to Defendants' motion for summary judgment and motion to hold in abeyance, Plaintiff filed a motion pursuant to Fed. R. Civ. P. 56(f), asking the Court to order the Defendants to file an answer to his complaint and produce certain discovery materials.  Dkt # 56.  Defendants opposed this motion.  Plaintiff also filed a "Reply Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment," Dkt. # 58, and a "Reply Statement Regarding Defendants' Proposed Findings of Fact, Dkt. # 57.  Then, on December 23, 2008, Plaintiff filed a memorandum in opposition to Defendants' motion for summary judgment and motion to hold in abeyance.  Dkt. # 62.

On January 30, 2009, the Court granted Defendants' motion to hold briefing of the second remand issue in abeyance, denied Plaintiff's Rule 56(f) motion without prejudice, and ordered Defendants to submit a status report regarding DHS's issuance of a response to Plaintiff's September 8, 2008 renunciation request.  *See* Minute Order of Hon. Richard W. Roberts (Jan. 30, 2009).  On February 9, 2009, Defendants filed a status report advising the Court that, on January 27, 2009, DHS issued a response to Plaintiff's September 8, 2008 renunciation request in which DHS explained that 8 U.S.C. § 1481(a)(6) is currently not effective because the United States is not in a "state of war" as that term is used in the statutory context of the Immigration and Nationality Act.  Dkt. # 65.  DHS explained that, for purposes of 8 U.S.C. § 1481(a)(6), the term "state of war" means a Congressionally declared state of war.  *Id*.

On February 10, 2009, the Court advised Plaintiff that he could supplement his briefing regarding the first remand issue by March 11, 2009, and ordered Defendants to submit their

3

dispositive motion on the second remand issue no later than March 27, 2009.[5]  Dkt. # 66.  On

February 23, 2009, Plaintiff filed a memorandum in which he stated, "[a]pparently, the first

remand issue involves purely legal issues, and as such there is no need for submission of

exhibits, affidavits or any other documents.  The court need only analyze the relevant statutes and

all documents already on record."  Dkt. # 69 at 1.  Accordingly, briefing on the first remand issue

is complete, and the issue is ripe for the Court's adjudication.

On February 23, 2009, Plaintiff filed a motion, pursuant to Fed. R. Evid. 201, asking the

Court to take judicial notice of the fact that the United States was in a state of war at the time he

submitted his requests to renounce his United States nationality under 8 U.S.C. § 1481(a)(6).

Dkt. # 70.  Defendants opposed Plaintiff's motion because the information he submitted did not

address the specific question at issue with regard to DHS's response to Plaintiff's request to

renounce his United States nationality:  whether the United States is in a "state of war" as that

term is used in the statutory context of the Immigration and Nationality Act.[6]  Dkt. # 71.

//

---

[5]  Defendants moved the Court for an enlargement of time until April 3, 2009, to file the present dispositive motion.  Dkt. # 72.

[6]  Plaintiff also asserted that the law of the case doctrine required that the Court take judicial notice of the fact that the United States is in a "state of war."  Dkt. # 70.  As the Supreme Court held in *National Cable Telecomm. Assoc. v. Brand X Internet Services*, 545 U.S. 967, 982 (2005), "a court's prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion."  This Court has never held that the terms of 8 U.S.C. § 1481(a)(6) are unambiguous.  *See* Dkt. # 21 at 5 (In a June 16, 2006 Memorandum Opinion in support of an Order granting Defendants' Motion to Dismiss, which was ultimately reversed, the Court took it "as a given" that the United States was in a "state of war" in the Middle East, without considering the ambiguity of the term as used in the INA.).  As argued herein, the statute is ambiguous, and DHS's interpretation is entitled to *Chevron* deference.

The term "state of war" in 8 U.S.C. § 1481(a)(6) is ambiguous, and DHS was required to interpret it to administer the statute.  Because DHS's interpretation that 8 U.S.C. § 1481(a)(6) requires a Congressionally declared state of war to be effective is a permissible interpretation of the statute, the Court should provide deference to the agency's interpretation.  Accordingly, Defendants respectfully submit that they are entitled to judgment as a matter of law because DHS's response denying Plaintiff's renunciation request is statutorily permissible, and there is no genuine issue as to any material fact.  *See* Fed. R. Civ. P. 56(c).

## SUMMARY JUDGMENT STANDARD OF REVIEW

Under Rule 56, summary judgment is required when the pleadings and evidence demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  A genuine issue of material fact is one that would change the outcome of the litigation.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986).  While all evidence and the inferences drawn therefrom must be considered in the light most favorable to the nonmoving party, *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), summary judgment should be granted if the moving party submits "affirmative evidence that negates an essential element of the nonmoving party's claim" or demonstrates "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim."  *Celotex*, 477 U.S at 331.  The nonmoving party has the burden of establishing more than the "mere existence of a scintilla of evidence" demonstrating a genuine issue in dispute for purposes of defeating the moving party's motion. *See Lester v. Natsios*, 290 F. Supp. 2d 11, 19-20 (D.D.C. 2003) (citing *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. at 255).  "[M]atters of law rather than of fact" may be presented for summary judgment.  *Douglas v. First Nat'l Realty Corp.*, 437 F.2d 666, 669 (D.C. Cir. 1970).

## DHS'S JANUARY 27, 2009 DENIAL OF PLAINTIFF'S RENUNCIATION REQUEST

On January 27, 2009, DHS denied Plaintiff's most recent request to renounce his United States nationality.  Dkt. # 65, Exhibit 1.  In the denial, DHS explained that 8 U.S.C. § 1481(a)(6) "is not available as a vehicle for renunciation of United States citizenship because the United States is not currently in a 'state of war' as that term is used in the INA.  For purposes of [8 U.S.C. § 1481(a)(6)], the term 'state of war' means a congressionally declared state of war."  *Id.* In further explanation, DHS traced the legislative history of the statute, which Congress first added to the immigration laws in 1944, when the United States was in a Congressionally declared state of war.  *Id.*  DHS also explained that the statutory context of the INA requires that "state of war," as used in 8 U.S.C. § 1481(a)(6), means a Congressionally declared state of war because the INA uses other terms, such as "hostilities" and "armed conflict" to describe conflicts that "fall short of a formal declaration of a state of war."  *Id.*

DHS also specifically addressed Plaintiff's argument in his renunciation request that Congress's authorization for use of military force abroad in 2001 and 2002 render the statute operative.  As DHS explained, Congressional authorization for use of military force is not the equivalent of a Congressional declaration of a state of war for purposes of 8 U.S.C. § 1481(a)(6). *Id.*

Because DHS determined that 8 U.S.C. § 1481(a)(6) is inoperative because the United States is not in a "state of war," as that term is used in the INA, DHS declined to make any

further determinations under that section with respect to Plaintiff's request to renounce his

United States nationality, such as whether his attempted renunciation would be against the

interest of national defense.  *Id*.

## ARGUMENT

The D.C. Circuit Court's remand instructs that, if this Court concludes authority over

renunciation requests pursuant to 8 U.S.C. § 1481(a)(6) belongs to DHS, this Court shall address

whether DHS's response to Plaintiff's renunciation request is statutorily permissible.[7]  *Kaufman*,

524 F.3d at 1334.   The second remand issues essentially requires this Court to now construe

Plaintiff's complaint as a challenge under section 706(2)(A) of the Administrative Procedures

Act ("APA"), which provides that a "reviewing court shall . . . hold unlawful and set aside

agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of

discretion or otherwise not in accordance with the law."[8]   5 U.S.C. § 706(2).

Because Plaintiff renewed his renunciation request following the D.C. Circuit Court's

remand, and DHS issued a response to that request on January 27, 2009, DHS's prior responses

---

[7]  For the reasons contained in Plaintiff's motion for summary judgment regarding the first remand issue, DHS, rather than the Attorney General, has authority over renunciation requests pursuant to 8 U.S.C. § 1481(a)(6).  *See* Dkt. # 54.  Moreover, as DHS has issued a response to Plaintiff's most recent renunciation request, there is no pending agency action to maintain Plaintiff's mandamus claim or APA claim to compel agency action unlawfully withheld.

[8]  Defendants note that the APA does not independently confer jurisdiction to review agency action, but instead prescribes how that jurisdiction may be exercised once conferred by some other statute.  *Califano v. Sanders*, 430 U.S. 99, 105, 107 (1977).  Nonetheless, Plaintiff also invokes 28 U.S.C. § 1331 (federal question) as a basis for this Court's jurisdiction.

have been superceded.[9]  This Court should therefore limit its analysis to DHS's January 27, 2009

response in which DHS denied Plaintiff's renunciation request because the United States is not in

a "state of war" as that term is used in the INA, and thus 8 U.S.C. § 1481(a)(6) currently is not

effective.

## A.      DHS's Interpretation of "State of War" in 8 U.S.C. § 1481(a)(6) is Correct.

Section 1481(a)(6) of title 8 of the United State Code, provides:

(a)      A person who is a national of the United States whether by birth or by
         naturalization, shall lose his nationality by voluntarily performing any of
         the following acts with the intention of relinquishing United States
         nationality –

                                        * * *

(6)      making in the United States a formal renunciation of nationality in such
         form as may be prescribed by, and before such officer as may be
         designated by, the Attorney General, *whenever the United States shall be
         in a state of war* and the Attorney General shall approve such renunciation
         as not contrary to the interests of national defense . . . .

8 U.S.C. § 1481(a)(6) (emphasis added).  Because DHS's response to Plaintiff involves the

interpretation and application of this INA provision, the two-step analysis from *Chevron U.S.A,*

*Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984), governs the Court's analysis of the

second remand issue.  In *Chevron*, the Supreme Court held that when a statute within an agency's

jurisdiction is ambiguous and the implementing agency's construction is reasonable, federal

courts must accept the agency's construction of the statute, even it differs from what the court

believes to be the best interpretation.  *Id.* at 843-44 & n.11; *see also Brand X*, 545 U.S. at 980

---

[9]  Plaintiff's motion for summary judgment was filed while his September 8, 2008
renunciation request was pending before DHS; consequently, his arguments regarding the
statutory permissibility of DHS's responses are based on prior decisions rendered moot by the
issuance of DHS's January 27, 2009 response.  Because Plaintiff's motion for summary
judgment does not address DHS's January 27, 2009 response, the Court should deny his motion
with regard to the second remand issue.

(discussing *Chevron*).

The issue here is whether 8 U.S.C. § 1481(a)(6) requires a Congressionally declared "state of war" to enable United States citizens to renounce their citizenship.  Because Congress has not spoken directly to the issue in this case, and DHS's interpretation is reasonable, this Court should provide *Chevron* deference to DHS's interpretation.

### 1.     The Term "State of War" as Used in 8 U.S.C. § 1481(a)(6) Is Ambiguous.

Congress did not explicitly define the term "state of war" in the INA.  Thus, under "step one" of *Chevron*, Congress has not directly spoken to the precise question at issue here.  Plaintiff argues that the United States was in a state of war at the time he submitted his request to renounce his United States nationality, thereby making 8 U.S.C. § 1481(a)(6) "operative."  Dkt. 46 at 9.  In support, he contends that "a state of war exists when the political branches of the government – even without a formal declaration – treat a given armed conflict as a war."  *Id.* (citing Curtis A Bradley & Jack J. Goldsmith, *Congressional Authorization and the War on Terrorism*, 118 HARV. L. REV. 2047, 2070 (2005); Harold Konju Koh, *The Coase Theorem and the War Power: A Response*, 41 DUKE L. J. 122, 126 (1991); and *Mitchell v. Laird*, 488 F.2d 611, 615 (D.C. Cir. 1973)).  Plaintiff's arguments nonetheless ignore that the term "state of war," as it is used in INA § 1481(a)(6), has a historical context associated with Congress's declaration of war.  *See, e.g.,* S.J. Res 116, 55 Stat. 795, Dec. 8, 1944 (declaring that a "state of war" existed with Japan).

Moreover, in determining whether Congress has specifically addressed the question at issue, a reviewing court should not confine itself to examining a particular statutory provision in isolation.  *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000).  Rather, "the

meaning – or ambiguity – of certain words or phrases may only become evident when placed in context . . . It is a 'fundamental cannon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Id*. at 132-33 (citing *Davis v. Michigan Dept. of Treasury*, 489 U.S. 803, 809 (1989)).

That the term "state of war" in 8 U.S.C. § 1481(a)(6) is ambiguous is underscored by the use of another term to describe armed conflict short of a Congressionally declared state of war in another subsection of 8 U.S.C. § 1481.  Section 1481(a)(3) reads as follows: "A person who is a national of the United States . . . shall lose his nationality by . . . entering, or serving in, the armed forces of a foreign state if (A) such armed forces are engaged in *hostilities* against the United States . . . ."  8 U.S.C. § 1481(a)(3) (emphasis added).  Thus, even within the same statute, Congress contrasted the use of the term "hostilities" in subsection (3) with the term "state of war" in subsection (6).  Congress's use of these different terms within the same statute, at the very least, demonstrates that the term "state of war" in 8 U.S.C. § 1481(a)(6) is ambiguous and requires DHS to interpret its meaning to administer the statute.

Similarly, the INA contains another provision providing for the naturalization of members of the military who served on active duty during periods of "hostility" or "armed conflict" that can be declared by the President.  *See* 8 U.S.C. § 1440; INA § 329.  Because Congress specifically included the term "state of war" in 8 U.S.C. § 1481(a)(6), yet did not do so in other provisions of the INA where other types of "hostilities" and "armed conflict" – short of a Congressionally declared state of war – are clearly contemplated, there is an ambiguity that DHS must interpret in order to administer the statute.  Accordingly, the Court must proceed to *Chevron* "step two."

10

## 2.     DHS's Determination Should be Given Deference and Upheld as a Reasonable Construction of the Statute.

Because the plain language of the statute is ambiguous, DHS's interpretation is entitled to deference under *Chevron* "step two."  *See Chevron*, 467 U.S. at 842-43.  When an element of the agency's determination includes an interpretation and application of the INA's terms, that interpretation is entitled to deference in accordance with *Chevron*, and must be judicially accepted if it "is based on a permissible construction of the statute." *INS v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999).

### a.     DHS's Interpretation Warrants *Chevron* Deference

For an agency interpretation to qualify for *Chevron* "step two" deference, Congress must have delegated it authority to make interpretations carrying the authority of law.  *See United States v. Mead*, 533 U.S. 218, 221, 226-27 (2001).  "Delegation of such authority may be shown in a variety of ways," for example by the agency's power to engage in adjudication.  *Id.* at 227. As explained in Defendant's motion for summary judgment on the first remand issue, Dkt. # 54, DHS now has authority over requests to renounce United States nationality pursuant to 8 U.S.C. § 1481(a)(6).  DHS's interpretation of 8 U.S.C. § 1481(a)(6) is embodied in its January 27, 2009 response to Plaintiff's request to renounce his United States nationality.  DHS's consideration of Plaintiff's request constitutes an agency "order" resulting from informal adjudication because the statute authorizing DHS's decision does not require that a formal hearing occur.  *See* 5 U.S.C. § 551(6), (13); *see also Fontana v. Caldera*, 160 F. Supp. 2d 122, 128 n.3 (D.D.C. 2001) (citing 5 U.S.C. § 554(a)).

//

The Supreme Court has not directly decided the issue of whether *Chevron* deference should apply per se to informal as well as formal adjudications. *See Mead*, 533 U.S. 218 (Scalia, J., dissenting) (pointing out that majority decision does not clarify whether *Chevron* applies to informal adjudication). While *Chevron* itself involved a formal rule-making process under the APA, the Supreme Court has since held that courts should apply *Chevron* to agency interpretations of law that occur during the adjudication of claims as well. *See De Bartolo Corp. v. Florida Gulf Coast Bldg. & Const. Trades Council*, 485 U.S. 568 (1988) (*Chevron* applies to questions of law in agency adjudication as well as in rule-making). The Supreme Court in *Christensen v. Harris County* made clear that *Chevron* applies to statutory constructions announced in formal adjudications under the APA. *Christensen*, 529 U.S. 576, 587 (2000). The *Christensen* Court held that *Chevron* deference is not warranted for "opinion letters," "policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law . . ." *Id*. The majority in *Christensen* left open the question of whether *Chevron* deference applies to an agency's interpretation of law that occurs in an informal adjudication. In *Mead*, the Supreme Court clarified that the applicability of *Chevron* turns not on a category of decision-making process such as informal adjudication, but rather on the extent of the authority delegated by Congress in the statute authorizing the agency decision. *Mead*, 533 U.S. at 226-27.

As the Supreme Court further explained in *Barnhart v. Walton*, the *Mead* decision indicated that "whether a court should provide [*Chevron*] deference depends in significant part upon the interpretive method used and the nature of the question at issue." *Barnhart*, 535 U.S. 212, 222 (2002) (holding that interstitial nature of the legal question, related expertise of the agency, the importance of the question to the administration of the statute, the complexity of that

administration, and the careful consideration of the agency over time all indicated that *Chevron* is the appropriate lens through which to view the legality of agency interpretation at issue); *see also Mylan Laboratories, Inc. v. Thompson*, 389 F.3d 1272, 1279-80 (D.C. Cir. 2004) (holding that FDA "letter decision" [informal adjudication] received *Chevron* deference under *Barnhart* analysis).

Here, the question of whether 8 U.S.C. § 1481(a)(6) requires a Congressionally declared "state of war" to render the statute effective is of paramount importance in administering the statute. In performing its informal adjudication of Plaintiff's renunciation request, DHS carefully considered the legislative history and statutory context 8 U.S.C. § 1481(a)(6) in determining that 8 U.S.C. § 1481(a)(6) requires a Congressionally declared state of war to make the statute effective. Thus, there is no cause to doubt the authoritative nature of DHS's interpretation of 8 U.S.C. § 1481(a)(6) set forth in the denial of Plaintiff's renunciation request, and the Court should provide *Chevron* deference to DHS's interpretation that "state of war,"as used in 8 U.S.C. § 1481(a)(6), means a Congressionally declared state of war.

### b.    DHS's Interpretation is Consistent with the Legislative History of 8 U.S.C. § 1481(a)(6)

DHS's interpretation of the statute is reasonable in light of legislative history of 8 U.S.C. § 1481(a)(6). The Supreme Court has stated that [a] fundamental cannon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, *contemporary*, common meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979) (emphasis added). The language currently contained in 8 U.S.C. § 1481(a)(6) originated in 1944, when Congress added subsection (i) to section 401 of the Nationality Act of 1940, former 8 U.S.C. §

13

801.  Act of July 1, 1944, 58 Stat. 677.  Former 8 U.S.C. § 801 prescribed the "means of losing

United States nationality, and subsection (i) provided an additional means – namely, the loss of

United States nationality by resident nationals by filing a written renunciation "whenever the

United States shall be in a state of war."  *See Tadayasu Abo v. Clark*, 7 F. Supp. 806, 809 (N.D.

Cal. 1948) (reversed in part by *McGrath v. Tadayasu Abo*, 186 F.2d 766 (9th Cir. 1951)).  At the

time Congress included the term "state of war" in this provision, the United States was in a

Congressionally declared state of war.  *See* S.J. Res 116, 55 Stat. 795, Dec. 8, 1941 (declaring

that a "state of war" existed with Japan); S.J. Res 119, 55 Stat. 796, Dec. 11, 1941 (declaring that

a "state of war" existed with Germany); and S.J. Res 120, 55 Stat. 797, Dec. 11, 1941 (declaring

that a "state of war" existed with Italy).  Because Congress included the specific term "state of

war" in the precursor to 8 U.S.C. § 1481(a)(6) that it used to declare war, DHS reasonably

concluded that 8 U.S.C. § 1481(a)(6) similarly requires a Congressionally declared state of war in

order to be effective.

### c.  DHS's Interpretation is Consistent with the Statutory Context of 8 U.S.C. § 1481(a)(6).

DHS's interpretation is reasonable in light of the statutory context of the INA.  As

discussed, *supra*, the current version of the INA not only includes 8 U.S.C. § 1481(a)(6), which

specifically requires a "state of war," it also contains another provision providing for the

renunciation of United States nationality by entering, or serving in the armed forces of a foreign

state if [] such armed forces are engaged in hostilities against the United States," 8 U.S.C. §

1481(a)(3), and naturalization of members of the military who served on active duty during

periods of "hostility" or "armed conflict" that can be declared by the President.  8 U.S.C. § 1440.

14

Based on Congress's inclusion of the term "state of war" in 8 U.S.C. § 1481(a)(6) and its failure to include that term in other INA provisions where other types of "hostilities" and "armed conflict" are clearly contemplated, DHS reasonably concluded that "state of war," as used in 8 U.S.C. § 1481(a)(6), cannot mean anything short of a Congressional declaration of war. *See Duncan v. Walker*, 533 U.S. 167 (2001) (stating that it is the Court's "duty to give effect, if possible, to every clause and word of a statute").

### d.    DHS's Interpretation is Consistent with Relevant Case Law

DHS's interpretation is also reasonable in light of relevant case law, which has addressed the operativeness of 8 U.S.C. § 1481(a)(6).  On October 30, 2008, a district court summarily dismissed a claim similar to Plaintiff's.  *Duncan v. Dep't. of State*, 2008 WL 4821323 (W.D. Va. Oct. 30, 2008).  In *Duncan*, an incarcerated plaintiff sought to renounce his United States nationality in 2008.  The Government informed Duncan that "a person may not renounce U.S. citizenship while present in the United States, unless the United States is in a state of war.  Since the United states is not currently in a state of war, U.S. citizenship must be renounced abroad." *Id.* at *1 (emphasis omitted from original).  The district court concluded that the "war time exception to the requirement that renunciation occur outside the country is not currently applicable.  As stated, Duncan's request to renounce his citizenship under § 1481(a)(6) has been denied by an appropriate federal official on the ground that the country is not at war."  Notably, this decision was issued following Congress's authorization for the use of military force in both Afghanistan and Iraq, which Plaintiff has repeatedly asserted as a basis for his theory that the United States is in a state of war sufficient to make 8 U.S.C. § 1481(a)(6) operative for his purposes.

15

Another district court also concluded that the United States was not in a state of war, as the term is used in the INA, in 2002, and 8 U.S.C. § 1481(a)(6) was inoperative during that time period. *Koos v. Holm*, 204 F. Supp. 2d 1099, 1108 (W.D. Tenn. 2002). Plaintiff acknowledges this decision in his motion for summary judgment. Dkt. # 46 at 13 ("Rather, the Court [in *Koos*] ruled that the statute was inoperative because (at that time) there was no state of war."). Plaintiff's characterization of that decision ignores the fact that *Koos* was decided on May 31, 2002 – more than eight months after Congress had authorized the use of military force in Afghanistan. *See* Authorization for the Use of Military Force, Pub. L. No. 107-40, 115 Stat. 224 (2001). These decisions demonstrate that DHS's interpretation that "state of war" in 8 U.S.C. § 1481(a)(6) necessitates a Congressionally declared state of war is reasonable.

For the foregoing reasons, DHS's interpretation that 8 U.S.C. § 1481(a)(6) requires a Congressionally declared state of war for the statute to be operative is reasonable. Thus, under *Chevron*, the Court must accept DHS's construction of the statute.[10]   Because the United States

---

[10]   Even if the Court were to conclude that DHS's interpretation is not entitled to *Chevron* deference, DHS's interpretation would still warrant deference under the *Skidmore* standard. *See Skidmore v. Swift & Co.*, 323 U.S. 134 (1944); *see also Doe v. Leavitt*, 552 F.3d 75, 79-80 (1st Cir. 2009) (recognizing that "if an informal agency interpretation is deemed not to warrant *Chevron* deference, it may nonetheless lay claim to a lesser degree of deference under the *Skidmore* banner") (citing *Mead*, 533 U.S. at 234). Pursuant to *Skidmore*, an agency's "interpretation is 'entitled to respect' only to the extent is has the power to persuade.'" *Gonzales v. Oregon*, 546 U.S. 243, 256 (2006) (citing *Skidmor*e, 323 U.S. at 140). Under *Skidmore*, the weight afforded to "a judgment in a particular case will depend on the thoroughness evidenced in [the agency's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors that give it the power to persuade, if lacking power to control." *Skidmore*, 323 U.S. at 140. For the same reasons explained, *supra*, that DHS's interpretation is reasonable and therefore entitled to *Chevron* deference, DHS's interpretation – at the very least – carries a great deal of persuasive power, and the Court should provide respect to DHS's interpretation that 8 U.S.C. § 1481(a)(6) requires a Congressionally declared state of war to be operative.

is not in a Congressionally declared state of war, Plaintiff may not renounce his United States nationality pursuant to 8 U.S.C. § 1481(a)(6), and DHS's denial of his renunciation request was statutorily permissible.

## CONCLUSION

In viewing the evidence in light most favorable to Plaintiff, it is clear that DHS correctly interpreted the term "state of war" as it is used in the statutory context of the INA in denying Plaintiff's renunciation request.  Because DHS's interpretation is not arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law, the APA does not accord relief to Plaintiff.  On the basis of the foregoing, Defendants request that this Court grant summary judgment in favor of Defendants with respect to the second remand issue.

**Date:**  April 3, 2009

Respectfully submitted,

JEFFREY A. TAYLOR
D.C. Bar # 498610
United States Attorney

RUDOLPH CONTRERAS
D.C. Bar # 434122
Assistant United State Attorney

HEATHER D. GRAHAM-OLIVER
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W.
Washington, D.C.  20530
(202) 305-1334

MICHAEL F. HERTZ
Acting Assistant Attorney General

DAVID J. KLINE
D.C. Bar # 203646
Director, District Court Section

17

VICTOR M. LAWRENCE
D.C. Bar # 449052
Principal Assistant Director, District Court Section


*/s/ Derek C. Julius*
DEREK C. JULIUS
Trial Attorney, District Court Section
Office of Immigration Litigation
United States Department of Justice
Ben Franklin Station, P.O. Box 868
Washington, D.C. 20044
(202) 532-4323

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of April, 2009, I caused the foregoing Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment to be served on Pro Se Plaintiff by mail, postage paid, addressed as follows:

**James J. Kaufman**
**No. 351960**
**Eau Claire County Jail**
**728 Second Avenue**
**Eau Claire, WI  54703**

*/s/ Derek C. Julius*
DEREK C. JULIUS
Trial Attorney, District Court Section
Office of Immigration Litigation
United States Department of Justice
Ben Franklin Station, P.O. Box 868
Washington, D.C. 20044
(202) 532-4323

19